**UNITED STATES DISTRICT COURT**
**SOUTHERN OF NEW YORK**

Richard Sunwoo,

Plaintiff,

v.

JPMorgan Chase & Co., JPMorgan Chase Bank, National Association, JPMorgan Chase Severance Pay Plan Administrator, and Does 1-50,

Defendants.

No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

**COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

Plaintiff Mr. Richard Sunwoo ("Plaintiff" or "Mr. Sunwoo"), by and through his attorneys, The Ottinger Firm, P.C., as and for his Complaint in this action against JPMorgan Chase & Co. ("JPMC"), JPMorgan Chase Bank, National Association ("JPMCNA"), JPMorgan Chase Severance Pay Plan Administrator ("JPMCSPPA"), and Does 1–50 ("Does") (collectively, "Defendants"), alleges upon personal knowledge and upon information and belief as to other matters as follows:

**NATURE OF THE CLAIMS**

1. Mr. Sunwoo brings this action against his former employer JPMC and all other Defendants to redress Defendants' unlawful conduct against Mr. Sunwoo for breach of the Release Agreement (**Exhibit A**, Release Agreement), or, in the alternative, Defendants' failure to fairly administrator Defendants' Severance Plan.

2. Respondent's unlawful conduct was knowing, malicious, willful and wanton, and/or showed a reckless disregard for Mr. Sunwoo, which has caused and continues to cause him

to suffer substantial economic and noneconomic damages, and severe mental anguish and emotional distress.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to E.R.I.S.A. §§ 502, 503 et. seq., 29 U.S.C. § 1132 et seq. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the unlawful conduct that gave rise to these claims primarily occurred in this District.

## THE PARTIES

5. Plaintiff Sunwoo is an individual and resident of New York, New York. Mr. Sunwoo was employed by JPMC from 2002 until September 2018. During his employment with Respondent, Mr. Sunwoo received numerous promotions. Mr. Sunwoo's ultimate title at JPMorgan Chase & Co. was Private Client Advisor.

6. Defendant JPMC is a financial services provider specializing in, among other things, wealth management. Defendant JPMC operates in over 100 countries and employees over 250,000 people. Defendant JPMC resides in New York City, New York and employed Mr. Sunwoo.

7. Defendant JPMorgan Chase Bank, National Association, is the JPMorgan Chase Severance Pay Plan Sponsor.

8. Defendant JPMorgan Chase Severance Pay Plan Administrator is the JPMorgan Chase Severance Pay Plan Administrator.

9. Does 1-50 are the other individuals who are and/or were in active control and management of the Company, regulated the employment of persons employed by the Company,

including Mr. Sunwoo. As soon as the Does true identities are learned, Mr. Sunwoo will seek to add them as individual Defendants in their personal and corporate capacities through the appropriate motion in compliance with all local rules.

## FACTUAL ALLEGATIONS

1. On August 3, 2018, Mr. Sunwoo received a letter from Respondent informing him that his employment with the company would end on September 16, 2018, due to changes in staffing needs (**Exhibit B**, Notice Letter). The Notice Letter also states:

> If you do not secure a position within the Firm by your termination date, provided you comply with your employment obligation described herein, you will be eligible for a payment equal to 48 weeks of severance-eligible compensation, based on annual eligible compensation of $400,000, reduced by any non-working notice period, in accordance with the terms of the Severance Plan. Your severance payments will be paid to you in one lump sum, provided that you timely execute the Release Agreement ("Release"), and further provided you comply with your employment obligations described herein. (Emphasis added.)
>
> The severance pay and related benefits and services outlined in this letter (which are conditioned upon signing the Release), exceed any pay and/or benefits you would be eligible to receive if you do not sign the Release.
>
> If the Firm receives your executed Release within the required time frame, subject to your compliance with your employment obligations described herein, your severance payment will be made within two regularly scheduled pay periods after your termination date. …

2. Mr. Sunwoo spoke with JPMC's authorized representatives at least three times after receiving the Notice Letter offering 48 weeks of pay calculated on an annual eligible base compensation of $400,000.

3. JPMC's authorized representatives informed Mr. Sunwoo their calls were being conducted on a recorded line.

4. Mr. Sunwoo asked JPMC's authorized representative to confirm that if he executed the requested Release Agreement, Mr. Sunwoo would receive 48 weeks of pay calculated on an annual eligible base compensation of $400,000.

5. JPMC's authorized representative clearly and repeatedly confirmed that Mr. Sunwoo, would receive 48 weeks of pay calculated on an annual eligible base compensation of

$400,000 in exchange for executing the requested Release Agreement. JPMC's authorized representative used the foregoing exact words in confirming the amount of 48 weeks of pay calculated on an annual eligible base compensation of $400,000.

6. On September 3, 2018, Mr. Sunwoo entered into a Release Agreement with Respondent. Pursuant to the terms of the Release Agreement (**Exhibit A**), Mr. Sunwoo released all claims related to his employment with the company in exchange for the pay described in the Notice Letter. The Release Agreement reads in relevant part:

> I, Richard Sunwoo (U432310), sign this Release Agreement ("Release") in exchange for the severance pay, severance related benefits and career services described in the Notice Letter to me dated August 3, 2018 (the "Notice Letter"). The notice letter is incorporated into this release by reference. (Emphasis added.)
>
> I, Richard Sunwoo (U432310), sign this Release Agreement ("Release") in exchange for the severance pay, severance related benefits and career services described in the Notice Letter to me dated August 3, 2018 (the "Notice Letter"). The notice letter is incorporated into this release by reference.
>
> I understand that this Release will be binding on me, my heirs, assigns, representatives and estate. I hereby release JPMorgan Chase & Co. (and any predecessor or successor entities thereof), … any fiduciaries of any employee benefit plan (collectively, the "Company") from all liability for any claims or potential claims relating to my employment with the Company and/or the termination of my employment, subject to the exceptions listed below. I understand that "claims" includes claims I know about and claims I do not know about, as well as the continuing effects of anything that happened before I sign below.
>
> The claims covered by this Release include but are not limited to the following, to the extent such claims may be waived or released under applicable law:
>
> - any claims under any federal, state or local law, including, but not limited to, … the Employee Retirement Income Security Act of 1974 ("ERISA") including, but not limited to, breach of fiduciary duty and equitable claims arising under 1132(a)(3) of ERISA, …
>
> The following are claims that I am not releasing:
>
> - any rights or claims … (ii) under the terms of the Notice Letter …
>
> **Agreement Not to Sue**
> I agree that I will not file a lawsuit or initiate any other legal proceedings for money or other relief in connection with the claims I am releasing above. …

**Continuing Obligations, Code of Conduct**

By signing below, I agree to the terms of the Notice Letter and my continuing obligations outlined below. …

I understand that the Company views its relationships with its employees and customers as important and valuable assets. I acknowledge that information about the Company's customers including their identities, preferences and transactions with the Company, as well as information concerning the identity of employees of the Company, constitutes proprietary and confidential information belonging to the Company which was assembled and developed over time through the expenditure of significant resources and substantial effort. Accordingly, during the remainder of my employment and for a period of one year after the date my employment terminates (or any longer period specified in any equity award or other agreements applicable to me), I will not, on my own behalf or on behalf of any other party, without the prior written consent of the Director of Human Resources of the Company or his or her delegate:

1. solicit, induce, or encourage any of the Company's then current employees to leave the Company or to apply for employment elsewhere;

2. hire any employee or former employee who was employed by the Company on the date my employment terminates, unless the individual's employment with the Company terminated because his or her job was eliminated, or the individual's employment with the Company has been terminated for more than six months; or

3. solicit, induce, or encourage to leave the Company, or divert or attempt to divert from doing business with the Company, any then current customers, suppliers, or other persons or entities that were serviced by me or whose names became known to me by virtue of my employment with the Company, or otherwise interfere with the relationship between the Company and such customers, suppliers, and other persons or entities. This does not apply to publicly known institutional customers that I service after my employment with the Company terminates without the use of the Company's confidential or proprietary information.

If I am bound by additional post-employment obligations to the Company set forth in other agreements I have with the Company or in policies applicable to me, including (but not limited to) incentive plans, equity awards, line of business policies, sales agreements or other compensation/employment agreements, those restrictions and obligations remain in full force and effect, to the extent allowed by applicable law.

I understand that if I am subject to any agreement to arbitrate disputes with the Company that arbitration agreement is not superseded by this Agreement and remains in full force and effect. …

**Enforcement of Release**

I agree that violating my continuing obligations outlined in this Release will be considered a material breach of this Release and that in such a case it will be appropriate for the Company to take legal action to ask for money and an injunction. I agree that any injunction the Company obtains will be in addition to any money damages. I further understand that if I violate the terms of this Release, any of the severance pay and benefits I received because of this Release or the Notice Letter will stop and/or be due and owing to the Company.

> I agree that, to the extent not preempted by federal law, this Release and the Notice Letter will be governed by the laws of the State of New York.
>
> …
>
> **Deadline to Return; Knowing and Voluntary Agreement**
> I understand and agree that I have until 9/16/2018 to sign this Release.
>
> By signing below, I confirm that I have read this Release, understand it, agree to it and sign it knowingly and voluntarily. I agree that I am signing this Release in exchange for benefits to which I would not otherwise be entitled. I am hereby advised to discuss this Release with an attorney of my choosing (at my own expense) prior to the execution of this Release. I agree that I have been given a reasonable period of time (at least forty-five (45) calendar days) to review, consider and sign this Release. I agree that any modification, material or otherwise, made to this Release does not restart or affect in any manner the original (forty-five (45) calendar days) consideration period. I understand that I may change my mind and revoke this Release within seven (7) days of signing it by executing my revocation within that seven-day period.
>
> **Entire Agreement**
> I understand that this Release and the Notice Letter set forth the entire agreement and fully supersede any and all prior agreements or understandings between the Company and me regarding the subject matter thereof. I further understand and agree that this Release and the Notice Letter may not be altered, amended, modified, superseded, canceled or terminated except by an express written agreement signed by both the Company and me that specifically references this Release and the Notice Letter

10. In sum, under the Release Agreement and incorporated Notice Letter, Respondent is obligated to pay Mr. Sunwoo 48 weeks of pay based on annual eligible compensation of $400,000, or $369,230.77.

11. It is undisputed that Mr. Sunwoo fully performed all obligations required of him to entitle him to the full and correct amount of payment described in the Release Agreement.

12. The Release Agreement's revocation period expired on September 11, 2018, and at that time the Release Agreement became a fully integrated binding agreement.

13. All monies due were to be paid to Mr. Sunwoo within two pay periods of his September 16, 2018 termination date.

14. Defendants caused only $30,769 to be paid to Mr. Sunwoo within the two-pay period window of time.

15. Mr. Sunwoo immediately contacted Defendants' authorized representative after receiving the incorrect amount of payment from Defendants. Mr. Sunwoo informed Defendants' authorized representative he received only $30,769 as opposed to $369,230.77. Defendants' authorized representative listened to Mr. Sunwoo, and then informed Mr. Sunwoo that she would speak with the appropriate JPMC individuals and be in touch as quickly as possible. Defendants' authorized representative did not contact Mr. Sunwoo at any time in the future. Mr. Sunwoo made further attempts to speak with appropriate JPMC representatives, but all of Mr. Sunwoo's efforts were futile.

16. On December 4, 2018, Mr. Sunwoo initiated an arbitration against JPMC seeking to compel the correct amount of payment due and outstanding (i.e., $338,461.55).

17. On April 30, 2019, Arbitrator Jacquelin Drucker erroneously dismissed Mr. Sunwoo's arbitration against Defendants as a claim for additional benefits pursuant to a severance plan governed by E.R.I.S.A as opposed to a claim demanding the correct amount of pay be issued in light of Defendant's breach of the fully integrated Release Agreement.

18. On April 14, 2020, Defendants issued Mr. Sunwoo a final decision under the JPMorgan Severance Plan denying Mr. Sunwoo's demand Defendants pay Mr. Sunwoo all monies outstanding.

**AS AND FOR A FIRST CAUSE OF ACTION**

**Breach of Contract**

19. Mr. Sunwoo re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs of this Complaint herein as if fully restated.

20. The Release Agreement is a valid and binding contract that Mr. Sunwoo executed on September 3, 2018.

21. Mr. Sunwoo performed all conditions, covenants, and promises required on his part in accordance with the terms and conditions of the Release Agreement.

22. Defendants have voluntarily, knowingly, unjustifiably, and inexcusably breached their obligations under the Release Agreement by failing to pay Mr. Sunwoo the $369,230.78 owed to him pursuant to the terms of the Release Agreement and the incorporated Notice Letter. To date, Defendants have only paid Mr. Sunwoo $30,769.23, leaving Defendants liable for the sum of $338,461.55.

23. As a direct and proximate result of Defendants' breaches, Mr. Sunwoo has suffered, and will continue to suffer, general and special damages to be proven at the trial in this Action.

24. As a direct and proximate result of Defendants' breaches, Mr. Sunwoo has incurred costs and expenses, including attorneys' fees, and is entitled to recover said costs and expenses, including all reasonable attorneys' fees.

## AS AND FOR A SECOND CAUSE OF ACTION

### Fraudulent Misrepresentations

25. Claimant re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs of this Complaint herein as if fully restated.

26. Defendants made representations of a material existing fact and knew those representations to be false and did so intentionally for a deceptive purpose.

27. Defendants' fraudulent representations were the direct and proximate cause of Claimant's injuries.

28. In addition to monetary damages, Mr. Sunwoo has suffered costs and expenses as a result of Defendants' wrongful conduct and is entitled to recover his costs and expenses, including reasonable attorneys' fees.

29. In addition to monetary damages and costs and expenses, Defendants' conduct was knowing, willful and egregious. Claimant is entitled to recover compensatory and punitive damages to be proven at the trial in this Action.

**AS AND FOR A THIRD CAUSE OF ACTION**

**Claim for Benefits and Other Appropriate Relief under E.R.I.S.A.**

30. Mr. Sunwoo re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs of this Complaint herein as if fully restated.

31. E.R.I.S.A § 502 et seq., 29 U.S.C. § 1132 et seq., authorizes a participant or beneficiary of a plan to bring a civil action to recover benefits due under the terms of the plan, to enforce his rights under the term of the plan, and to clarify his rights to future benefits under the plan.

32. Defendants refusal to pay Mr. Sunwoo the correct amount of payment due and outstanding (i.e., $338,461.55) is a violation of Mr. Sunwoo's rights under JPMorgan & Chase, Co.'s Severance Plan governed by E.R.I.S.A §§ 502, et seq., 503, et seq. and other applicable rules, regulations, and statutes.

33. Defendants refusal to pay Mr. Sunwoo the correct amount of payment due and outstanding (i.e., $338,461.55) is a violation that has and continues to damage Mr. Sunwoo.

34. Defendants' conduct is the actual and proximate cause of injury and damage to Mr. Sunwoo in the amount of $338,461.55 as well as other amounts (including litigation costs and reasonable attorneys' fees).

## PRAYER FOR RELEIF

**WHEREFORE**, Plaintiff prays that this Court grant judgment in his favor against Defendants, containing the following relief:

A. An order declaring Defendants' conduct complained of herein to be unlawful;

B. An award of damages in an amount to be determined at trial, plus prejudgment interest;

C. An award of damages in an amount to be determined at trial plus prejudgment interest, for any and all other economic losses suffered by Mr. Sunwoo;

D. An award of statutory, liquidated and compensatory damages in an amount to be determined at trial, plus prejudgment interest;

E. An award of compensatory damages in an amount to be determined at trial, plus prejudgment interest;

F. An award of punitive damages in an amount to be determined at trial, plus prejudgment interest;

G. An award of costs incurred by Mr. Sunwoo in this action, including but not limited to reasonable attorneys' fees to the fullest extent permitted by law; and

H. Such other and further relief as the Court may deem just and proper.

Dated: July 8, 2020
New York, New York

Yours, etc.
**THE OTTINGER FIRM, P.C.**

Benjamin D. Weisenberg
450 Lexington Ave.
4th Floor
New York, New York 10017
Telephone: (212) 571-2000
Facsimile: (212) 571-0505
benjamin@ottingerlaw.com
*COUNSEL FOR PLAINTIFF*