# Exhibit A

# Summary Plan Description for the JPMorgan Chase U.S. Severance Pay Plan

Effective 5/29/2018

**Questions?**

If you have general questions about eligibility for severance pay or related benefits, please contact accessHR at

1-877-JPMChase

1-877-576-2427

*Quick Path*: Enter your Standard ID or Social Security number; press 1; enter your PIN; press 1

If calling from outside the United States:

1-212-552-5100

Service Representatives are available from 8 a.m. to 8:30 p.m., Eastern Time, Monday through Friday except certain U.S. holidays

If you have other questions regarding the U.S. Severance Pay Plan, please contact Global People Support.

# Summary Plan Description for the JPMorgan Chase U.S. Severance Pay Plan

At JPMorgan Chase, we value our employees and the contributions they make to our business. And we strive to help our employees find opportunities to make meaningful contributions — either in their current jobs or elsewhere in the Company.

However, there may be circumstances when that's not possible, and, for business reasons, JPMorgan Chase needs to end an employee's employment in instances such as:

- Elimination of a position;
- Sale or closing of all or part of a business unit; or
- Relocation of the Company location where the employee's position is based.

In these circumstances, the JPMorgan Chase U.S. Severance Pay Plan (the "Plan") may provide pay to help the employee manage his or her finances while looking for new work. Under the Plan, it's discretionary whether severance is provided. This summary will provide you with a better understanding of how the Severance Pay Plan works, including how and when severance is paid.

**This Is Your Summary Plan Description and Plan Document**

This version of the JPMorgan Chase U.S. Severance Pay Plan summary plan description has been provided as of May 29, 2018, and is intended to provide you with an overview of the Plan as of that date. This summary plan description also constitutes the Plan document for the JPMorgan Chase U.S. Severance Pay Plan. The terms of the JPMorgan Chase U.S. Severance Pay Plan as described in this summary plan description are effective as of May 29, 2018 with respect to written notices of job elimination under the Plan dated on or after May 29, 2018. With respect to such notices, it supersedes the U.S. Severance Pay Plan Summary Plan Description and Plan document as in effect immediately prior to May 29, 2018. JPMorgan Chase & Co. expressly reserves the right to amend, modify, reduce, change, or terminate its benefits and plans at any time. The Plan does not create a contract or guarantee of employment between JPMorgan Chase and any individual. JPMorgan Chase or you may terminate the employment relationship at any time.

## Table of Contents Page

**Important Terms** ........ **4**
**Some Quick Facts** ........ **6**
**How the Severance Pay Plan Works** ........ **7**
Eligibility ........ 7
The Amount of Severance Pay........ 8
Severance Payment ........ 9
Repayment of Severance Pay........ 9
Loss of Severance Pay ........ 10
Applying for a Position With the Company........ 10
Obtaining a Position With the Company ........ 11
Beneficiary........ 11
Claiming Severance Pay ........ 11
Plan Administration ........ 13
Plan Documents Control ........ 13
Right to Amend or Terminate ........ 13
**General Plan Information** ........ **14**
**Your Rights Under ERISA** ........ **15**
Enforce Your Rights ........ 15
Assistance with Your Questions ........ 15

# Important Terms

As you read this summary of the JPMorgan Chase U.S. Severance Pay Plan, you'll come across some important terms related to the Plan. To help you better understand the Plan, some of those important terms are defined here.

<table>
<tr><th>Term</th><th>Definition</th></tr>
<tr><td>Alternative Employment</td><td>As determined in the sole discretion of the Plan Administrator, another position with the Company, that generally provides base pay that is comparable to base pay for your current position after considering market conditions and the market value of the current position, and is within a reasonable commuting distance (generally within 50 miles) from the Company location (i.e., JPMorgan Chase location) where your current position is based.</td></tr>
<tr><td>Company</td><td>JPMorgan Chase & Co., a Delaware corporation, as well as its subsidiaries and affiliates that participate in the Plan.</td></tr>
<tr><td>Consolidated Omnibus Budget Reconciliation Act of 1985 as amended (COBRA)</td><td>A federal law that allows you and/or your covered dependents to continue medical, dental, vision and health care spending account coverage on an after-tax basis under certain circumstances if coverage would otherwise have ended.</td></tr>
<tr><td>Continuous Service<br><br>(for purposes of the Severance Pay Plan)</td><td>An uninterrupted period of service with the Company from the most recent date of hire until your employment with the Company terminates. A partial year of service of 183 days or more is considered a year of Continuous Service for purposes of calculating severance pay. Continuous Service includes service with "heritage" organizations (including certain predecessors of the Company) as follows:
<ul>
<li>For Heritage JPMorgan Chase employees who were employed by the Company as of June 30, 2005: Continuous Service as of June 30, 2005 includes uninterrupted service with JPMorgan Chase including uninterrupted service with heritage organizations (including immediate predecessors). Breaks in employment of more than six months for employees who were rehired before July 1, 2005 are considered to be interruptions of Continuous Service. In that case, the employee's rehire date designates the start of Continuous Service.</li>
<li>For Heritage Bank One employees who were employed by the Company as of June 30, 2005: Continuous Service as of June 30, 2005 will be determined by the Bank One Service Date (as documented in official company records).</li>
</ul>
For individuals who are re-employed by the Company on or after July 1, 2005 with a break in employment ending on or after July 1, 2005 of 12 months or less, Continuous Service will be considered uninterrupted; the period of the break in employment counts toward Continuous Service. For individuals who are re-employed by the Company on or after July 1, 2005 with a break in employment that exceeds 12 months, the rehire date will be used to measure the start of Continuous Service.
<ul>
<li>For Heritage Bear Stearns employees who were employed by the Company as of August 31, 2008: Continuous Service as of August 31, 2008 will be determined by the Bear Stearns Service Date (as documented in official company records).</li>
<li>For Heritage Bear Stearns employees re-employed on or after September 1, 2008:
<ul>
<li>For individuals who are re-employed by JPMorgan Chase on or after September 1, 2008, with a break in employment of 12 months or less, ending on or after September 1, 2008, Continuous Service will be considered uninterrupted; the period of the break in employment counts toward Continuous Service.</li>
<li>For individuals who are re-employed by JPMorgan Chase on or after September 1, 2008 with a break in employment that exceeds 12 months, the rehire date will be used to measure the start of Continuous Service.</li>
</ul></li>
<li>For Heritage WaMu employees who were employed by the Company as of June 30, 2009: Continuous Service as of June 30, 2009 will be determined by the applicable WaMu hire date or rehire date (per heritage WaMu guidelines and as documented in official company records).</li>
<li>For Heritage WaMu employees re-employed on or after July 1, 2009:
<ul>
<li>For individuals who are re-employed by JPMorgan Chase on or after July 1, 2009, with a break in employment of 12 months or less, ending on or after July 1, 2009, Continuous</li>
</ul></li>
</ul></td></tr>
</table>

| Term | Definition |
|---|---|
| | Service will be considered uninterrupted; the period of the break in employment counts toward Continuous Service.<br>• For individuals who are re-employed by JPMorgan Chase on or after July 1, 2009 with a break in employment that exceeds 12 months, the rehire date will be used to measure the start of Continuous Service.<br><br>Service performed either as a temporary employee (through a temporary agency) or under a contract, agreement or arrangement that purports to treat an individual as an independent contractor, or the employee of a leasing organization, agency or other similar entity, will not be counted under the Plan, even if the individual is subsequently determined (by judicial action or otherwise) to have been a common law employee of the Company at the time the service was performed and even if the individual subsequently becomes an eligible employee under the Plan.<br><br>Service with a company at the time of its acquisition by the Company will count toward Continuous Service if so provided under the terms of the applicable purchase agreement. |
| **Eligible Compensation for the Severance Pay Plan** | • For salaried employees, your weekly base salary, including any applicable shift differential and language differential, but excluding all bonuses, commissions, overtime, and other forms of special or incentive remuneration. This amount is multiplied by 52 to determine your annual eligible compensation.<br>• Note: Compensation greater than $400,000 per year is disregarded for purposes of determining Eligible Compensation.<br>• For hourly-paid employees, your hourly rate of pay times your regularly-scheduled weekly hours, including any applicable shift differential and language differential, but excluding all bonuses, commissions, overtime, and other forms of special or incentive remuneration. This amount is multiplied by 52 to determine your annual eligible compensation.<br>• If you are a commissioned employee without a base salary, please refer to your Benefits Pay Notice that sets forth the amount, if any, of eligible compensation recognized under the Plan. |
| **Notice Date** | The date that you are provided notice in writing under the Plan that your employment with the Company is ending for reasons specified under the Plan, and that you will be eligible to receive severance pay, subject to the Company's receipt of an executed Release Agreement. The Notice Date is generally 45 calendar days prior to your termination date, unless state or federal law requires a longer "notice period" or the Company determines that it is appropriate to extend the timeframe in a manner consistent with Section 409A of the Internal Revenue Code. Employees are generally required to work during the notice period. Depending upon the needs of your business, you may be given a portion of your notice period as "non-working," meaning you would not be required to perform work. Any period of non-working notice will reduce the severance paid to the employee by a correlating amount.<br><br>If you accept a job outside of the Company during this 45-day period, the business needs of your area do not otherwise require you to work through your termination date, and you are not covered by any other agreement regarding your departure date, you would be paid up to your last day worked, the official 45-day notice would end (i.e., you would not be paid the remainder of the notice period), and you would receive your severance payment, provided you have executed and not revoked the Release Agreement. |
| **Other Employer** | Any entity that assumes operations or functions formerly carried out by the Company, any entity to which the Company has outsourced any of its functions or sold any of its assets or operations or any entity that offers you employment at the request of or pursuant to an agreement or arrangement with the Company. |
| **Release Agreement** | A written agreement in a form designated by the Company pursuant to which, among other obligations, you release the Company from any claims that you might have against it arising out of the employment relationship. |

## Some Quick Facts

| | |
|---|---|
| **Discretionary Plan** | The Plan is a voluntary arrangement sponsored by the Company. The Company is not required by law to provide severance or a severance pay plan, and the Plan Administrator retains full and sole discretion to determine eligibility and the amount of severance pay, as well as to interpret the Plan. |
| **Severance Pay** | Your severance pay amount is equal to a number of weeks of Eligible Compensation based on years of Continuous Service (please see the chart in "The Amount of Severance Pay" on page 8). |
| **Form of Severance Payment** | You will receive a single lump sum payment of your severance pay through payroll following your termination date. |
| **Other Terminations** | The Plan does not provide severance pay: (i) for voluntary terminations; (ii) for involuntary terminations resulting from unsatisfactory performance, Code of Conduct violations, policy violations, attendance, or lateness; (iii) if the Release Agreement is not executed; or (iv) for any reasons other than those identified in the Plan. |
| **Sale of Business Unit or Transfer** | The Plan is intended to provide severance pay in the event of an involuntary job loss. If you're offered continued employment with the purchaser of your business unit or an Other Employer with which the Company has made employment arrangements, you are not eligible for severance pay, unless the Company issues you a written notice of job elimination and you meet the other eligibility requirements of the Plan. |
| **Changes in Termination Date** | The Company may, in writing, reschedule or rescind your termination date. If your termination date is rescheduled, you will be expected to work until your job activities end or until a mutually agreed upon date. (You may be permitted to accelerate your termination date if you have received a notice letter, you must commence an external job prior to your termination date, and your manager determines that the needs of the business area do not otherwise require you to work through your termination date.) If you have already executed a Release Agreement, you may be required to execute another Release Agreement prior to your newly-scheduled termination date. If your termination date is rescinded, you will not be considered to have lost your job and you will not be eligible for severance pay under the Plan. |

# How the Severance Pay Plan Works

The current general guidelines for the Plan are described below.

## *Eligibility*

The following criteria are currently used to determine eligibility under the Plan. You are eligible to receive severance pay if you are a full-time or part-time employee who is regularly scheduled to work 20 hours or more a week and who is:

- on a U.S. payroll of the Company or a U.S. expat (if not on the U.S. payroll of the Company); and
- subject to FICA withholding on compensation paid by the Company (unless a U.S. expat); and
- not employed in one of a limited number of positions that is ineligible for severance pay as determined by the line of business; and
- In active status, not on a leave of absence*; and
- Not covered under another severance arrangement or under a collective bargaining agreement (whether or not you receive severance pay under that arrangement or agreement); and
- Involuntarily terminated by the Company and you receive written notice of job elimination due to any of the following reasons (and you are not offered Alternative Employment with the Company. Please see the definition of "Alternative Employment" on page 4):
    - Elimination of your position;
    - Sale or closing of all or part of your business unit; or
    - Relocation of your position to a site that is more than a reasonable commuting distance (as determined by the Company in its sole discretion, but generally more than 50 miles) from the Company location (i.e., JPMorgan Chase location) where your current position is based.

*(Employees who are performing some service for the Company while receiving long-term disability benefits are not considered to be in active status under the Plan.)

If you meet all of the above requirements, you will be eligible for severance pay under the Plan only if you're notified by the Company in writing that you're eligible for severance pay as a result of your termination and you timely execute and return, and do not revoke, the Release Agreement in the form presented to you by the Company.

**Please Note:** Any individual performing services either as a temporary employee or under a contract, agreement or arrangement that purports to treat him or her as an independent contractor, or the employee of a leasing organization, agency or other similar entity, even if he or she is subsequently determined (by judicial action or otherwise) to have instead been a common law employee of the Company, is not eligible to participate in the Plan. Also, employees regularly scheduled to work fewer than 20 hours per week, interns, and occasional/seasonal employees are not eligible to participate in the Plan.

In accordance with the JPMorgan Chase Flight Duty Policy and notwithstanding any other provision of the Plan, JPMorgan Chase pilots who have not transferred to a non-flight position within the Company by their 65th birthday will be involuntarily terminated by the Company and eligible for severance pay under the Plan, subject to their timely execution and return of a Release Agreement in the form presented by the Company.

The Company's decisions about whether to involuntarily terminate an employee or to issue a notice of job elimination are within the Company's sole discretion and are not subject to review under the Plan or by the Plan Administrator.

## *The Amount of Severance Pay*

If you are eligible for severance pay hereunder, the Plan provides a number of weeks of severance pay calculated based upon your Eligible Compensation and years of Continuous Service as of your termination date. The following chart shows the number of weeks of severance pay available to eligible employees based upon their years of Continuous Service, unless they are eligible for severance pay described under an Exhibit to the Plan. The Company may add or remove such Exhibits to the Plan from time to time, and such Exhibits shall be part of the Plan. The provisions of an Exhibit supersede the provisions of the Plan to the extent necessary to eliminate inconsistencies between the Plan and such Exhibit. (Please see the definitions of "Eligible Compensation for the Severance Pay Plan" and "Notice Date" on page 5.)

For purposes of calculating severance pay under the following chart:

- After you complete one year of Continuous Service, a partial year of service of 183 days or more is treated as an additional year of service for purposes of calculating severance pay (for example: one year and 184 days = two years).
- Part-time employees regularly scheduled to work 20 hours or more per week on their Notice Date will receive severance at their part-time rate of pay, even if they were formerly full-time employees. In addition, if your scheduled-hours status (e.g., full-time/part-time status) changes after you receive written notice of job elimination but before your termination date, your severance will be based on the scheduled-hours status that you held at the time you received written notice.
- Eligible employees in sales positions who do not have a base salary should refer to their Benefits Pay Notice that sets forth the amount, if any, of eligible compensation recognized under the Plan.
- The charts summarize the amount of severance pay depending on whether your Eligible Compensation is less than $150,000 per year, or if your Eligible Compensation is $150,000 or more per year. Note: Compensation greater than $400,000 per year is disregarded for purposes of determining Eligible Compensation.
- If you receive non-working notice, the number of weeks of severance pay you receive will be reduced by the number of weeks of non-working notice you receive.

### (Eligible Compensation of Less than $150,000/Year)

| Years of Service | Weeks of Severance | Years of Service | Weeks of Severance |
|---|---|---|---|
| <1 - 1 | 4 | 11 | 25 |
| 2 | 4 | 12 | 28 |
| 3 | 7 | 13 | 31 |
| 4 | 8 | 14 | 34 |
| 5 | 10 | 15 | 37 |
| 6 | 12 | 16 | 40 |
| 7 | 14 | 17 | 43 |
| 8 | 16 | 18 | 46 |
| 9 | 19 | 19 | 49 |
| 10 | 22 | 20 or more | 52 |

**(Eligible Compensation of $150,000 or More/Year)**

| Years of Service | Weeks of Severance | Years of Service | Weeks of Severance |
|---|---|---|---|
| **<1 - 1** | 16 | **11** | 33 |
| **2** | 16 | **12** | 36 |
| **3** | 16 | **13** | 39 |
| **4** | 16 | **14** | 42 |
| **5** | 16 | **15** | 45 |
| **6** | 18 | **16** | 48 |
| **7** | 21 | **17** | 49 |
| **8** | 24 | **18** | 50 |
| **9** | 27 | **19** | 51 |
| **10** | 30 | **20 or more** | 52 |

**Please Note:** A partial year of service of 183 days or more is considered a year of service for purposes of calculating severance.

Severance pay that would otherwise be payable under this schedule shall be reduced or eliminated to the extent necessary to avoid liability under Section 280G of the Internal Revenue Code.

## *Severance Payment*

If you have met the requirements to be eligible for severance, you will receive a single lump sum payment of your severance pay through payroll following your termination date. No payment will be made unless you sign and return the Release Agreement within 45 days. Payment will be made within two regularly-scheduled pay periods after your termination date (and contingent upon the receipt of your signed Release Agreement).

Depending upon the needs of your business, you may be required to work during the notice period or be placed in an "on call" status and be required to perform transitional work when asked. This "on call" status is considered to be a working notice period during which time you may be expected to perform job duties. Alternatively, you may be given a portion of your notice period as "non-working," meaning you would not be required to perform work. Any period of non-working notice will reduce the severance paid to you by a correlating amount.

For example: You receive written notification of job elimination on May 1 (with a termination date of June 14). Based on your Continuous Service, you are eligible to receive 10 weeks of severance. Your manager places you on a nonworking notice period from May 15 through June 14. Since the 10 weeks of severance pay is offset by the nonworking notice period (i.e., approximately four weeks nonworking in this example), you would be eligible for approximately six weeks of severance pay to be paid in a lump sum following your termination date.

Severance pay will be reduced by any amount owed by you to the Company and all lawful withholdings. **Please Note:** For information related to continuation of health care benefits (i.e., medical, dental, vision,) under the Consolidated Omnibus Budget Reconciliation Act (COBRA), please see the **As You Leave Guide** or **As You Retire Guide**. The Guides are available on me@jpmc > Health and Life > Leaving the company> As You Leave Guide or As You Retire Guide.

## *Repayment of Severance Pay*

In the event that you secure another position with the Company after your employment has terminated, you must repay the "unused" portion of your severance prior to being re-employed. For example, an employee who received 16 weeks of severance in a lump sum and was reinstated 12 weeks after termination would have to repay four weeks of severance at the time of re-employment. If that same employee were re-employed after 16 weeks, then no repayment would be required.

# Important Information

In addition to the details already provided, here's some other important Plan information you should be aware of.

## *Leave Status*

You are not eligible for severance pay while you are on a leave of absence or if you are receiving long-term disability (LTD) benefits under a Company-sponsored plan.

If your position is selected for job elimination while you are on a leave of absence (and you meet all other severance eligibility requirements), you are generally eligible to receive severance if you are able to return to work within the maximum amount of leave time permitted (i.e., Short-Term Disability Leave, Parental Leave, Personal Leave-Unpaid, Family and Medical Leave, Military Leave, or job-protected time off under another JPMorgan Chase policy, such as the Accommodating Disabilities and Temporary Work Restrictions Policy).

If you did not receive a Notice Letter before your leave of absence commenced, and you are released to return to work following long-term disability (LTD) or you exhaust LTD benefits, you are not eligible for severance. Employees who are performing some services for the Company while receiving partial LTD benefits are considered to be on leave and are not eligible for severance pay.

If you receive a Notice Letter and then begin a leave of absence, the Notice Period will continue during your leave of absence. If your approved leave of absence extends longer than the Notice Period, your termination will occur at the conclusion of your approved leave of absence and you will receive severance if you have executed the Release Agreement.

## *Loss of Severance Pay*

Even if you receive a written notice that you will be eligible to receive severance pay, you will not receive severance pay if any of the following apply:

- You obtain a position with the Company before your termination date (and you remain in the position beyond 90 days, as explained in the Obtaining a Position With the Company section on page 11);
- Your job performance falls below acceptable levels or the Company determines that you have violated the Code of Conduct or engaged in misbehavior before your termination date;
- You resign before your termination date (Note: You may be permitted to accelerate your termination date if you have received a notice letter, you must commence an external job prior to your termination date, and your manager determines that the needs of the business area do not otherwise require you to work through your termination date.); or
- You fail to timely execute and return, or you revoke the Release Agreement.

Even if your severance pay has been paid, if the Company determines that you engaged in misconduct while you were employed by the Company, or if you solicit customers or employees of the Company during a period in which you are restricted from doing so, or if you violate the Company's Code of Conduct, you will be required to repay to the Company any severance pay that has been paid prior to the determination by the Company.

## *Applying for a Position With the Company*

If you apply for a position with the Company and you later determine that you do not want to pursue the position, you should withdraw your application or interest in the position as soon as possible. If you withdraw your application or interest in the position, or if you are offered the position and decline it, you will continue to be eligible for severance pay and related benefits (provided you continue to meet all other necessary requirements).

## Obtaining a Position With the Company

**Prior to Termination of your Employment:**

If you receive a Notice Letter and subsequently accept another position with the Company prior to the termination of your employment, there is a 90-day period of time for you and your manager to determine whether the position is a good fit. The Notice Period runs concurrently with this 90-day timeframe. If within 90 days of your placement in the new position, you or your manager determines that the position is not suitable, you are eligible to receive the severance outlined in your Notice Letter, provided you execute another Release Agreement at the end of the placement and you terminate employment with the Company. If you begin a leave of absence during the 90-day period, the 90-day period will be suspended at the beginning of the leave and will resume upon your return to work.

**After Termination of your Employment:**

If you receive a Notice Letter and subsequently accept another position with the Company after your employment has terminated (but within the number of Severance weeks for which you have been paid), you must repay any "unused" portion of severance prior to being re-employed. (Refer to "Repayment of Severance Pay" on page 9). If within 90 days of placement in the new position, you or your manager determines that the position is not suitable, you are eligible to receive any remaining severance balance and resume any other severance-related benefits and services for the balance of the applicable period, provided you execute another Release Agreement at the end of the placement and you terminate employment with the Company.

Please Note:

- The 90-day period described above does not apply if business needs change resulting in reversal of the job elimination and you are instead offered Alternative Employment with the Company. Please see the definition of "Alternative Employment" on page 4.
- For each job elimination, there is generally one 90-day period permitted per employee.

## Beneficiary

In the event of the death of an individual for whom severance is payable under the Plan, any unpaid severance will be paid to the beneficiary named for the individual's basic life insurance. If no beneficiary had been named for basic life insurance, the payment will be made to the individual's estate. If the employee did not execute the Release Agreement before his or her death, the employee's beneficiary or estate will be required to do so in order to receive severance pay under the Plan.

## Claiming Severance Pay

You do not have to apply for severance pay. You will be advised personally in writing that you will be eligible to receive severance pay under the Plan. The Plan Administrator has delegated to Corporate Employee Relations Americas the authority to decide initial claims under the Plan. If you do not receive a job elimination notice and believe that you are entitled to severance pay under the Plan, or if you dispute the amount of severance pay you receive, you may write to Corporate Employee Relations at:

JPMorgan Chase
Corporate Employee Relations
28 Liberty Street, Floor 22
Mail Code: NY1-A302
New York, NY 10005-1401

Or email: corporate.er.mailbox@jpmchase.com

Your written claim must be received within 60 days after the event giving rise to the claim. Any written claims received more than 60 days after the event giving rise to the claim will be denied. You should include a statement of the facts and the reason why you believe that you are entitled to severance pay. Corporate Employee Relations will respond in writing within 60 days of receiving your written claim for severance pay. Corporate Employee Relations is allowed to take an extension to notify you of a denial of severance pay, if necessary. If Corporate Employee Relations needs additional time to review your claim, you will be notified in writing of the extension, and given an explanation of the reason for the extension and the date that you can expect a decision on your claim for severance pay.

If your initial claim for severance pay is denied, you will be provided with an explanation of the denial, which will include the following:

- The specific reason(s) for the denial;
- References to the specific Plan provisions on which the denial is based;
- A description of any additional material or information needed to process your claim and an explanation of why the material or information is necessary; and
- A description of the Plan's appeal procedures and time limits, including a statement of your right to bring a civil action under ERISA after, and if, your appeal is denied.

If your initial claim for severance pay is denied, you – or your authorized representative – may appeal the decision in writing to the Plan Administrator at:

JPMorgan Chase Severance Pay Plan Administrator
JPMorgan Chase & Co.
28 Liberty Street
22nd Floor, Mail Code NY1-A302
New York, NY 10005-1401

You have 60 days to appeal a claim for severance pay that is denied under the Plan. In your appeal, you have the right to:

- Submit written comments, documents, records, and other information relating to your claim;
- Request, free of charge, reasonable access to, and copies of, all documents, records, and other information that:
  - Was relied upon in denying the severance pay;
  - Was submitted, considered, or generated in the course of denying the severance pay regardless of whether it was relied on in making the decision; and
  - Demonstrates compliance with the administrative processes and safeguards required in denying the severance pay.
- A review of your claim that takes into account all comments, documents, records, and other information submitted or considered in the initial decision to deny the severance pay.

The Plan Administrator will respond within 60 days of receiving your written appeal. The Plan Administrator is allowed to take an extension of an additional 60 days to notify you of a denial of severance pay, if necessary. If an extension is necessary, you will be notified before the end of the original notification period. This notification will include the reason(s) for the extension and the date you can expect to receive a decision on your appeal for the denied severance pay.

If your appeal for severance pay is denied, the Plan Administrator will provide an explanation for the denial, which will include the following:

- The specific reason for the denial;
- References to the specific Plan provisions on which the denial is based;
- A description of any additional material or information needed to process your appeal and an explanation of why the material or information is necessary;
- A statement that you're entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim; and
- A statement of your right to bring a civil action under ERISA.

**If you bring a civil action under ERISA, you must commence the action within one year of the denial of your appeal for severance pay, regardless of any state or federal statutes relating to limitations of actions.**

If your claim or appeal is approved, you will still be required to sign a Release Agreement and meet all other eligibility requirements of the Plan in order to receive severance pay.

## *Plan Administration*

The Plan Administrator has full, sole and absolute discretion to interpret and administer the Plan, including, but not limited to determining whether an eligible termination has occurred, whether the circumstances of any particular separation makes payment of severance pay under the Plan appropriate, the amount of severance pay, and the form of the Release Agreement to be signed by the participating employees. The Plan Administrator may delegate this authority, in its sole discretion. The decisions of the Plan Administrator or its delegates shall be final and binding on all employees.

## *Plan Documents Control*

Only the official Plan documents are used to determine severance pay eligibility or resolve claims disputes. Payments granted under the Severance Pay Plan cannot be assigned. You have the right to request and receive copies of the controlling Plan documents from Corporate Employee Relations. This summary plan description also constitutes the Plan document for the JPMorgan Chase U.S. Severance Pay Plan.

## *Right to Amend or Terminate*

JPMorgan Chase reserves the right to amend, modify, reduce severance pay under, or terminate any provision(s) of the Plan at any time by act of the Plan Administrator. The Company may also terminate the Plan at any time.

# General Plan Information

| | |
|---|---|
| **Plan Sponsor** | JPMorgan Chase Bank, National Association<br>28 Liberty Street, Floor 22<br>Mail Code: NY1-A302<br>New York, NY 10005-1401 |
| **Plan Year** | January 1 – December 31 |
| **Plan Administrator** | JPMorgan Chase Severance Pay Plan Administrator<br>JPMorgan Chase & Co.<br>28 Liberty Street<br>22nd Floor, Mail Code NY1-A302<br>New York, NY 10005-1401 |
| **Fiduciaries** | **About Plan Fiduciaries**<br>The Plan "fiduciary" is the individual or organization responsible for Plan administration, claims administration, and managing Plan assets. The Plan fiduciary has a duty to administer the Plan prudently and in the best interest of all Plan members and beneficiaries.<br><br>**Prudent Actions by Plan Fiduciaries**<br>In addition to establishing the rights of Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the Plan. Certain individuals who are responsible for the plans are called "fiduciaries," and they have a duty to administer the Plan prudently and in the interest of you, other Plan participants, and beneficiaries. While participation in the Plan does not guarantee your right to continued employment, no one — including your employer or any other person — may terminate you or otherwise discriminate against you in any way to prevent you from obtaining your severance pay or exercising your rights under ERISA. |
| **Agent for Service of Legal Process** | Legal Papers Served<br>JPMorgan Chase & Co.<br>4 Chase Metrotech Center<br>Floor 18<br>Mail Code: NY1-C312<br>Brooklyn, NY, 11245-0001<br>Service of legal process may also be made upon a Plan trustee or the Plan Administrator. |
| **Employer Identification Number** | 13-4994650 |
| **Plan Number** | 512 |

## Your Rights Under ERISA

The Employee Retirement Income Security Act of 1974 (ERISA) gives you certain rights and protections while you are a participant in the Plan. It is highly unlikely you will need to exercise these rights, but it is important that you be aware of what they are. ERISA provides that all Plan participants are entitled to:

- Examine, without charge, at the office of the Plan Administrator, all Plan documents including insurance contracts and copies of all documents filed by the Plans with the U.S. Department of Labor, such as detailed annual reports (Form 5500 Series).
- Obtain, upon written request to the Plan Administrator, copies of all Plan documents and other Plan information (e.g., insurance contracts, Form 5500 Series, and updated summary plan descriptions). The Plan Administrator may charge you a reasonable amount for the copies.
- Receive a summary of the Plan's annual financial reports. (The Plan Administrator is required by law to furnish each participant with a copy of such reports.)

## *Enforce Your Rights*

If your claim for severance pay is denied or ignored, in whole or in part, you have the right to know why this was done, to obtain copies of documents relating to the decision free of charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance:

- If you request a copy of the Plan documents or the latest annual report from the Plan Administrator and do not receive it within 30 days, you may file suit in a U.S. federal court. In such a case, the court may require the Plan Administrator to provide the information and pay up to $110 a day until you receive the materials, unless they were not sent because of reasons beyond the control of the Plan Administrator.
- If it should happen that the Plan fiduciaries misuse Plan money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a U.S. federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim to be frivolous.

## *Assistance with Your Questions*

If you have any questions about the JPMorgan Chase Severance Plan, you should contact the Plan Administrator at the address shown in "Plan Administrator" on page 13. If you have any questions about this statement or about your rights under ERISA, you should contact the nearest Regional Office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory, or:

Division of Technical Assistance and Inquiries
Employee Benefits Security Administration
U.S. Department of Labor
200 Constitution Avenue, N.W.
Washington, D.C. 20210

You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration or by visiting www.dol.gov/ebsa via the Internet.