**UNITED STATES DISTRICT COURT**
**SOUTHERN OF NEW YORK**

Richard Sunwoo,

Plaintiff,

v.

JPMorgan Chase & Co., JPMorgan Chase Bank, National Association, JPMorgan Chase Severance Pay Plan Administrator, and Does 1-50,

Defendants.

No.: 1:20-cv-05410-VSB

**AFFIDAVIT OF PLAINTIFF**
**RICHARD SUNWOO**

I, Richard Sunwoo, being duly sworn, deposes and says:

1. I am the Plaintiff in the above captioned action. I am, therefore, fully familiar with the facts and circumstances as described herein. The following is based on my personal knowledge, or, when so stated, based upon my best information and belief.
2. I worked for JPMorgan Chase & Co. ("JPMC") without incident until the morning of August 2, 2018.
3. Within an hour of my arrival on August 2, 2018, I was informed that my department had been closed, I was instructed to immediately vacate the office, and informed that JPMC's Human Resources team would email me additional information within 24 hours.
4. On August 3, 2018, I received the Notice Letter informing me that my employment with the company would end on September 16, 2018. *Attached hereto as* Exhibit 1, Notice Letter.
5. The Notice Letter reads, in relevant part:

> If you do not secure a position within the Firm by your termination date, provided you comply with your employment obligation described herein, you will be eligible for a payment equal to 48 weeks of severance-eligible compensation, based on annual eligible compensation of $400,000, reduced by any non-working notice period, in accordance with the terms of the Severance Plan. Your severance payments will be paid to you in one lump sum, provided that you timely execute the Release Agreement ("Release"), and further provided you comply with your employment obligations described herein. (Emphasis added.)

> The severance pay and related benefits and services outlined in this letter (which are conditioned upon signing the Release), exceed any pay and/or benefits you would be eligible to receive if you do not sign the Release.
>
> If the Firm receives your executed Release within the required time frame, subject to your compliance with your employment obligations described herein, your severance payment will be made within two regularly-scheduled pay periods after your termination date. …

6. I also received JMPC's Release Agreement. *Attached hereto as* Exhibit 2, Release Agreement.
7. The Release Agreement reads in relevant part:

> I, Richard Sunwoo (U432310), sign this Release Agreement ("Release") in exchange for the severance pay, severance related benefits and career services described in the Notice Letter to me dated August 3, 2018 (the "Notice Letter"). The notice letter is incorporated into this release by reference.
>
> I understand that this Release will be binding on me, my heirs, assigns, representatives and estate. I hereby release JPMorgan Chase & Co. (and any predecessor or successor entities thereof), … any fiduciaries of any employee benefit plan (collectively, the "Company") from all liability for any claims or potential claims relating to my employment with the Company and/or the termination of my employment, subject to the exceptions listed below. I understand that "claims" includes claims I know about and claims I do not know about, as well as the continuing effects of anything that happened before I sign below.
>
> The claims covered by this Release include but are not limited to the following, to the extent such claims may be waived or released under applicable law:
>
> - any claims under any federal, state or local law, including, but not limited to, … the Employee Retirement Income Security Act of 1974 ("ERISA") including, but not limited to, breach of fiduciary duty and equitable claims arising under 1132(a)(3) of ERISA, …
>
> The following are claims that I am <u>not</u> releasing:
>
> - any rights or claims … (ii) under the terms of the Notice Letter …
>
> **<u>Agreement Not to Sue</u>**
> I agree that I will not file a lawsuit or initiate any other legal proceedings for money or other relief in connection with the claims I am releasing above. …
>
> **<u>Continuing Obligations, Code of Conduct</u>**
> By signing below, I agree to the terms of the Notice Letter and my continuing obligations outlined below. …
>
> I understand that the Company views its relationships with its employees and customers as important and valuable assets. I acknowledge that information about the Company's customers including their identities, preferences and transactions with the Company, as well as information concerning the identity of employees of

the Company, constitutes proprietary and confidential information belonging to the Company which was assembled and developed over time through the expenditure of significant resources and substantial effort. Accordingly, during the remainder of my employment and for a period of one year after the date my employment terminates (or any longer period specified in any equity award or other agreements applicable to me), I will not, on my own behalf or on behalf of any other party, without the prior written consent of the Director of Human Resources of the Company or his or her delegate:

1. solicit, induce, or encourage any of the Company's then current employees to leave the Company or to apply for employment elsewhere;

2. hire any employee or former employee who was employed by the Company on the date my employment terminates, unless the individual's employment with the Company terminated because his or her job was eliminated, or the individual's employment with the Company has been terminated for more than six months; or

3. solicit, induce, or encourage to leave the Company, or divert or attempt to divert from doing business with the Company, any then current customers, suppliers, or other persons or entities that were serviced by me or whose names became known to me by virtue of my employment with the Company, or otherwise interfere with the relationship between the Company and such customers, suppliers, and other persons or entities. This does not apply to publicly known institutional customers that I service after my employment with the Company terminates without the use of the Company's confidential or proprietary information.

If I am bound by additional post-employment obligations to the Company set forth in other agreements I have with the Company or in policies applicable to me, including (but not limited to) incentive plans, equity awards, line of business policies, sales agreements or other compensation/employment agreements, those restrictions and obligations remain in full force and effect, to the extent allowed by applicable law.

I understand that if I am subject to any agreement to arbitrate disputes with the Company that arbitration agreement is not superseded by this Agreement and remains in full force and effect. …

**Enforcement of Release**

I agree that violating my continuing obligations outlined in this Release will be considered a material breach of this Release and that in such a case it will be appropriate for the Company to take legal action to ask for money and an injunction. I agree that any injunction the Company obtains will be in addition to any money damages. I further understand that if I violate the terms of this Release, any of the severance pay and benefits I received because of this Release or the Notice Letter will stop and/or be due and owing to the Company.

I agree that, to the extent not preempted by federal law, this Release and the Notice Letter will be governed by the laws of the State of New York.

…

**Deadline to Return; Knowing and Voluntary Agreement**
I understand and agree that I have until 9/16/2018 to sign this Release.
By signing below, I confirm that I have read this Release, understand it, agree to it and sign it knowingly and voluntarily. I agree that I am signing this Release in exchange for benefits to which I would not otherwise be entitled. I am hereby advised to discuss this Release with an attorney of my choosing (at my own expense) prior to the execution of this Release. I agree that I have been given a reasonable period of time (at least forty-five (45) calendar days) to review, consider and sign this Release. I agree that any modification, material or otherwise, made to this Release does not restart or affect in any manner the original (forty-five (45) calendar days) consideration period. I understand that I may change my mind and revoke this Release within seven (7) days of signing it by executing my revocation within that seven day period.

**Entire Agreement**
I understand that this Release and the Notice Letter set forth the entire agreement and fully supersede any and all prior agreements or understandings between the Company and me regarding the subject matter thereof. I further understand and agree that this Release and the Notice Letter may not be altered, amended, modified, superseded, canceled or terminated except by an express written agreement signed by both the Company and me that specifically references this Release and the Notice Letter.

8. The Notice Letter – on its face – plainly describes a lump sum amount of $369,230.77 (*i.e*, 48 weeks based on annual eligible compensation of $400,000).
9. The Notice Letter – again, on its face – expressly provides that I will receive the lump sum amount outlined in the Notice Letter if Defendants received the executed Release Agreement within the required time frame and I fully complied with the employment obligations described in the Notice Letter.
10. The Release Agreement – on its face – plainly describes that I will receive the $369,230.77 (*i.e*, 48 weeks based on annual eligible compensation of $400,000) described in the Notice Letter dated 8/3/2018 in exchange for signing the Release Agreement.
11. I spoke with JPMC's authorized representatives at least three times after receiving the Notice Letter and Release Agreement.
12. JPMC's authorized representatives clearly and repeatedly confirmed I would receive $369,230.77 (*i.e*, 48 weeks based on annual eligible compensation of $400,000) in exchange for signing the Release Agreement.
13. I signed the attached Release Agreement on September 3, 2018.
14. I timely executed and timely returned the Release Agreement.

15. I fully performed all of my duties and responsibilities found within in the Release Agreement.
16. The Release Agreement obligated Defendants pay me the lump sum certain amount fully described in the 8/3/2018, Notice Letter (*i.e*, 48 weeks based on annual eligible compensation of $400,000, or $369,230.77)
17. On September 13, 2018, Defendants caused $30,769 to be delivered me. I immediately contacted JPMC's authorized representative.
18. I informed JPMC's authorized representative I received only $30,769 as opposed to $369,230.77.
19. JPMC's informed me that she would speak with the appropriate JPMC individuals and be in touch as quickly as possible.
20. Despite JPMC's authorized representative's assurance I would be contacted, JPMC never contacted me in regard to Defendants paying me the incorrect amount (*i.e.,* $30,769) as opposed to the correct amount (*i.e.,* $369,230.77).
21. I made further attempts to speak with appropriate JPMC representatives, but all of my efforts were unsuccessful.
22. Defendants continue to refuse to pay me the contractually correct amount of money.
23. I filed an Arbitration before the American Arbitration Association on December 4, 2018.
24. On April 30, 2019, Arbitration Jacqueline F. Drucker determined she did not have jurisdiction to hear the claims asserted in my Arbitration. *Attached hereto as* Exhibit 3, Arbitration Order.
25. On January 31, 2020, Defendants issued a denial letter that read, in part: "Due to an error, Mr. Sunwoo was initially incorrectly informed of the amount of severance for which he was eligible under the terms of the Plan, but he was informed of the correct amount shortly thereafter." *Attached hereto as* Exhibit 4, Defendants' First Denial Letter.
26. On April 14, 2020, Defendants issued a denial letter that read, in part: "Mr. Sunwoo was formally advised in a notice letter dated August 3, 2018 (the "Notice Letter"), that his position was being eliminated with a termination date of September 16, 2018 (the "Termination Date"). The Notice Letter stated that Mr. Sunwoo would be entitled to a severance payment of "48 weeks of severance-eligible compensation, based on annual eligible compensation of $400,000 . . . in accordance with the terms of the Severance Plan."

The notice provided that he sign a release no later than September 16, 2018. On September 5, 2018 Mr. Sunwoo submitted an executed release letter which provided that it was revocable for seven days following execution." *Attached hereto as* Exhibit 5, Defendants' Second Denial Letter.

27. Based upon the foregoing, and upon all of the papers and arguments submitted by my attorneys in opposition to Defendants' Motion to Dismiss, I respectfully request Your Honor deny the Defendants' Motion to Dismiss in full.
28. This is the first time asking for the above requested relief.
29. I declare under penalty of perjury that the above is true and correct to the best of my knowledge.

Dated: November 16, 2020

Richard Sunwoo