# Attachment 3

# AMERICAN ARBITRATION ASSOCIATION
## EMPLOYMENT ARBITRATION TRIBUNAL

**IN THE MATTER OF THE ARBITRATION BETWEEN**

**RICHARD SUNWOO,**

**CLAIMANT,** **AAA CASE NO. 01 18 0004 4716**

**v.**

**BEFORE ARBITRATOR JACQUELIN F. DRUCKER**

**JP MORGAN CHASE & CO. AND**
**JOHN DOES 1 – 50,**

**RESPONDENTS.**

## ORDER ON MOTION TO DISMISS

## I. PROCEDURAL BACKGROUND

Richard Sunwoo ("Claimant" or "Mr. Sunwoo") initiated the instant arbitration by submitting to the American Arbitration Association ("Association") a Demand for Arbitration, with a Statement of Claim, dated December 4, 2018. The Demand asserts claims for breach of contract and fraudulent misrepresentation against JP Morgan Chase & Co. ("Respondent") and John Does 1 – 10 (these unknown individuals are referred to herein, collectively, as "Individual Respondents"). The parties have agreed that this matter proceeds pursuant to the Binding Arbitration Agreement appended to the Chase Wealth Management Supervision, Arbitration, Confidentiality and Non-Solicitation Agreement dated January 22, 2015, ("Arbitration Agreement") and, where the Arbitration Agreement is silent, the *Employment Arbitration Rules* of the American Arbitration Association ("Association Rules").

The undersigned Arbitrator was selected and appointed in accordance with the applicable procedures, as administered by the Association. Throughout this proceeding, both sides were ably represented by legal counsel. Claimant was represented by Benjamin D. Weisenberg, Esq., of The Ottinger Firm, PC, 401 Park Avenue, New York, New York. Respondents were represented by Brendan T. Killeen, Esq., Melissa D. Hill, Esq., and Sarah L. Huff, Esq., of Morgan Lewis & Bockius, LLP, 101 Park Avenue, New York, New York 10178. As part of the pre-hearing process, Respondents sought and were granted leave pursuant to Paragraph 7(e) of the Arbitration Agreement and Association Rule 27 to file a Motion to Dismiss, and an agreed

schedule for submissions was developed. The parties also agreed that, if the motion were denied in whole or in part, this matter would proceed to hearing on August 12 and 13, 2019.

Respondents' Motion to Dismiss was timely filed, as were Claimant's opposition and Respondents' reply. Following the Arbitrator's review and consideration of the parties' thorough and well-developed submissions, oral argument was held via telephonic conference call on April 1, 2019. Upon careful and comprehensive consideration of the extensive arguments and authorities presented by the parties, the Arbitrator, accepting as true all facts alleged by Claimant, grants Respondents' Motion to Dismiss as to all claims presented herein, for the reasons set forth below.

## II. FACTS AND APPLICABLE CONTRACT AND PLAN PROVISIONS

For purposes of this Motion, the Arbitrator accepts all assertions of fact set forth by Claimant in his Statement of Claim as true, and she views all questions of fact in the light most favorable to Claimant, drawing all reasonable inferences in his favor. Based upon that standard, the facts applicable to consideration of this Motion are briefly stated below.

Claimant began working for Respondent in 2002. In the course of his continued employment, Mr. Sunwoo on January 22, 2015, executed and entered into the Chase Wealth Management Supervision, Arbitration, Confidentiality and Non-Solicitation Agreement which provides, in Paragraph 12 (A), as follows:

> 12. Arbitration of Controversies
>
> A. Employment Disputes. You acknowledge and agree that your employment is subject to your and JPMC's agreement to submit any and all employment-related disputes that cannot be resolved internally to binding arbitration, in accordance with the Binding Arbitration Agreement (attached). You acknowledge and agree you have read and understand the Binding Arbitration Agreement, have accepted its terms and understand that it is a condition of your employment with JPMC.

The referenced Binding Arbitration Agreement was appended to the foregoing document and was initialed on each page by Claimant. (The two documents are referred to herein, collectively, as the "Arbitration Agreement.") The Binding Arbitration Agreement provides in relevant part as follows:

> 2. COVERED CLAIMS: "Covered Claims" include all legally protected employment-related claims, excluding those set forth below in Paragraphs 3 and 4 of this Agreement, that I now have or in the future may have against JP Morgan Chase or its officers, directors, shareholder, employees or agents which arise out of or relate my employment or separation from employment with JPMorgan Chase and all legally protected employment-related claims that JPMorgan Chase has or in the future may have against me, including, but not limited to, claims of employment

> discrimination or harassment if protected by applicable federal, state or local law, and retaliation for raising discrimination or harassment claims, failure to pay wages, bonuses or other compensation, tortious acts, wrongful, retaliation and/or constructive discharge breach of an express or imposed contract, promissory estoppel, unjust enrichment, and violations of any other common law, federal, state, or local statutes, ordinance regulation or public policy.. . . .
>
> 3. EXCLUDED CLAIMS: This Agreement does not cover, and the following claims are not subject to arbitration under the Agreement: (a) any criminal complaint or proceeding, (b) any claims covered by state unemployment insurance, state or federal disability insurance, and/or state workers' compensation benefit laws, except that claims for retaliation pursuant to these laws shall be subject to arbitration under this Agreement, (c) any claim under the National Labor Relations Act, and (c) claims for benefits under a plan that is governed by Employee Retirement Income Security Act of 1974 ("ERISA").

On August 3, 2018, Mr. Sunwoo, who at that time held the position of Private Client Advisor, received a letter (the "Notice Letter") from Respondent's Human Resources division advising him that "staffing needs have changed" and that his position was to be eliminated. His employment with Respondent was to be terminated effective September 16, 2018. The Notice Letter further stated:

> This notice letter ('Notice Letter') describes the severance pay and related benefits and services for which you will be eligible based on the terms of the JPMorgan Chase Severance Pay Plan (the 'Severance Plan').

The Notice Letter addressed the duration of the notice period and Claimant's obligations during that time. It also contained a section entitled "Severance Pay," which states in relevant part as follows:

> If you do not secure another position within the Firm by your Termination Date, provided you comply with your employment obligations described herein, you will be eligible for a payment equal to 48 weeks of severance-eligible compensation, based on an annual eligible compensation of $400,000, reduced by any non-working Notice Period, in accordance with the terms of the Severance Plan. Your severance payment will be paid to you in one lump sum, provided that you timely execute the Release Agreement ("Release"), and further provided you comply with your employment obligations described herein.
>
> The severance pay and related benefits and services outlined in this letter (which are conditioned upon signing the Release), exceed any pay and/or benefits you would be eligible to receive if you do not sign the Release.

> If the Firm receives your executed Release within the required time frame, subject to your compliance with your employment obligations described herein, your severance payment will be made within two regularly-scheduled pay periods after your termination date. Your severance payment will be reduced by any period of non-working notice.
> . . . .
>
> If for any reason the number of weeks of severance pay described in this letter differs from the number of weeks that you are eligible to receive under the Severance Plan, you will receive the number of weeks specified in the Severance Plan.

The Notice Letter specified that Claimant had until September 16, 2018, to execute the Release Agreement ("Release") electronically and that a failure to do so within that timeframe would result in ineligibility for the severance pay and related benefits and services.

The Notice Letter sets forth contact and access information for Customer Service Representatives. In addition, the terms of the Severance Pay Plan are addressed in greater detail in the Summary Plan Description for the JPMorgan Chase U.S. Severance Pay Plan, Effective 5/29/2018. On the first page are set forth the same telephone numbers and access processes for contacting Plan service representatives as set forth in the Notice Letter. The Summary Plan Description also addresses the formula for determining the amount of severance pay under the Plan, with tables for ascertaining weeks of severance based upon years of service.

Claimant asserts that, after having received the Notice Letter, he spoke at least three times by telephone with authorized Customer Service Representatives at the designated telephone number, each of whom stated that the calls were being recorded. As asserted by Claimant and accepted as true for purposes of this Motion, each representative confirmed to Claimant that, if he executed the Release, he would receive 48 weeks of pay calculated on an eligible base compensation of $400,000.

Claimant executed the Release on September 3, 2018. The Release states, in relevant part:

> I, Richard Sunwoo (U432310), sign this Release Agreement ("Release") in exchange for the severance pay, severance related benefits and career services described in the Notice Letter to me dated August 3, 2018 (the "Notice Letter"). The Notice Letter is incorporated into this Release by reference.

Mr. Sunwoo thereafter received payment from Respondent in the sum of $30,769. He asserts that, under the formula specified in the Notice Letter, the total to which he was entitled is $369,230.77. Claimant thereafter commenced the instant action for breach of contract and fraudulent misrepresentation, seeking payment of $338,461.55 and other damages.

## III. DISCUSSION

### A. Summary of Motion

Respondents argue that, regardless of the terminology Claimant uses, he is seeking additional severance benefits under the JPMorgan Chase U.S. Severance Pay Plan, which the parties agree is governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1001 *et seq*. Because of this, argue Respondents, the claims asserted herein are barred from arbitration by virtue of the parties' own Binding Arbitration Agreement, which, in Paragraph 3, explicitly excludes from arbitration "claims for benefits under a plan that is governed by" ERISA. Further, argue Respondents, even if the claims were found to fall within the scope of the Binding Arbitration Agreement, both claims (breach of contract and fraudulent misrepresentation) are state-law causes of action that are preempted by ERISA and therefore must be dismissed. (Respondents also argues that, under ERISA, the claims also are barred because Claimant failed to exhaust his administrative remedies. The Arbitrator, however, finds that she need not reach that issue.)

### B. Jurisdiction

The analysis of this Motion thus begins with the question of jurisdiction, for if the Arbitrator lacks the authority to consider these matters, the Demand and claims must be dismissed. In their Arbitration Agreement, the parties addressed arbitral jurisdiction in detail. In Paragraph 2 of the Binding Arbitration Agreement, the parties explicitly identified claims that are subject to their agreed arbitration process. Equally important, in Paragraph 3, they identified those types of claims that are excluded. Among the claims that the parties opted to exclude from the arbitral forum are "claims for benefits under a plan that is governed" by ERISA.

Underlying an arbitration proceeding must be a contract through which the parties to the dispute have agreed that the claims or the type of claims at issue are to be resolved in arbitration. It thus is a fundamental principle of arbitral law and contract law that a party cannot be required to arbitrate a matter that the parties have not agreed to submit to that forum. Arbitration agreements must be enforced "in accordance with their terms." *Volt Information Sciences v. Board of Trustees of Leland Stanford Jr. University*, 489 U.S. 468 (1989).

In this instance, when the parties entered into their contractual commitment to use arbitration to resolve certain disputes, they also explicitly excluded from arbitration claims for benefits under a plan that is governed by ERISA. Thus, by specific direction of the parties, no arbitration can proceed regarding such claims. It is undisputed that the JPMorgan US Severance Pay Plan ("the Plan") is governed by ERISA. The question posed here, therefore, is whether Claimant is asserting claims for benefits under that Plan. If he is, the claims must be dismissed for lack of jurisdiction.

In evaluating whether a claim is within the jurisdictional scope of a binding arbitration agreement, the analysis turns on the factual allegations, rather than the manner in which the legal claim may be described. See *Rosen v. Mega Bloks Inc.*, No. 06-CV-3474, 2007 U.S. Dist. LEXIS 48479 (SDNY, July 6, 2007). In this regard, Respondents assert that, although the causes of action are for breach of contract and fraudulent misrepresentation, Claimant contends, in his factual allegations, that severance benefits were improperly withheld under the Plan. Further, say Respondents, Claimant's contention that misleading information supplied by Respondents led him to execute the Release is simply a claim regarding the way in which the Plan was presented to him and is dependent upon the same set of facts upon which he asserts the breach of contract claim. Respondents thus argue that both claims, when assessed objectively, are for benefits under the Plan and thus fall within the parties' explicit exclusion language.

Upon a careful reading of the Statement of Claim and consideration of all arguments presented and all authorities cited, the Arbitrator must conclude that Respondents are correct. The claims asserted herein are based on (1) the proposal or offer made in the Notice Letter, which outlined the benefits to be provided under the ERISA-governed Severance Plan; (2) communications Claimant had with Plan representatives regarding application of the Plan's formula for severance; (3) the Release, which incorporated the Notice Letter and a summary of the Plan; and (4) payment, under the Plan, of severance benefits that were substantially less than Claimant expected. On the face of these claims and the supporting allegations, all of which are accepted as true for purposes of this Motion, it is abundantly clear that the claims are for severance benefits, which Claimant alleges were wrongfully denied and about which he asserts misrepresentations were made, and that those benefits are under the ERISA-governed Plan.

Claimant, however, contends that he does not assert claims for benefits under the Plan but, rather, seeks damages for breach of a contract other than the Severance Plan. The contract at issue, he argues, is the Release, rather than the Plan. Claimant contends that the Release, and the Notice Letter that is explicitly incorporated therein by reference, formed a fully integrated contract that stands apart from the Plan. Claimant asserts: (a) that this contract describes the exact amount Claimant was to receive;[1] (b) that he performed fully under that contract, providing the required release of claims; and (c) that Respondents, in failing to pay the full $369,230.78 owed "pursuant to the Release Agreement and the incorporated Notice Letter," have breached the contract created by the Release. Claimant also asserts that Respondents made representations of material fact, knowing them to be false and doing so for intentional purpose, and thereby engaged in fraudulent misrepresentation under New York law, also separate and apart from any rights or protections under the Plan.

Each of these contentions, however, inescapably circles back to Claimant's entry into the Severance Plan and his entitlement to benefits under it. Claimant's breach of contract claim is an assertion that the severance benefits Respondent paid were calculated improperly and were

---

[1] The Release and Notice Letter do not state a specific sum, but the Notice Letter does set forth the formula and the applicable base salary that have led to the Claimant's calculation that he was entitled to severance benefit payments totaling $369,230.77.

contrary to the formula set forth in the Plan, as described in the Notice Letter. Both the Notice Letter and the Release make explicit reference to the Plan and the severance payments that arise thereunder. Both documents establish unambiguously that the receipt of severance payments, to which Claimant was agreeing by executing the Release, was pursuant to the Plan. This is stated in the Release, quoted above, and is repeated numerous times in the Notice Letter. In addition, the communications that led Claimant to execute the Release also relate fully to the determination of the sum to which he says he was entitled under the Plan and the manner in which eligibility for those benefits was created.

For these reasons, the Arbitrator must conclude that she lacks jurisdiction to resolve these claims, for they raise claims for benefits under the ERISA-governed Severance Payment Plan and therefore are explicitly excluded from arbitration under Paragraph 3 of the parties' Binding Arbitration Agreement.

C. ERISA Preemption

The foregoing conclusion is further buttressed by the law of preemption. Respondents have argued that, even if the Arbitrator were to find that there is arbitral jurisdiction of these claims, both of the causes of action asserted must be dismissed, as they are state-law claims that are preempted by ERISA and therefore are to be addressed through the specific ERISA-compliant administrative structure set forth in the Plan. A thorough review of the claims, allegations, and applicable law as developed in the decades following the enactment of ERISA in 1974 support Respondents' argument in this regard. Section 514(a) of ERISA, 29 U.S.C. §1144(a); *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995). Claimant challenges this analysis, relying heavily on the principles and two-part test articulated by the United States Supreme Court in *Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004). The Court's analysis in *Davila*, however, is inapplicable here. It pertains to the question of removal to federal court and is used to determine whether a matter is subject to complete ERISA preemption, which requires that a proceeding be removed from state to federal court. Although the claims asserted in this proceeding would meet the two-factor standard under *Davila*,[2] the correct preemption standard has been articulated in the numerous cases, from federal courts in this jurisdiction, cited by both parties.

These authorities underscore the established recognition of the broad scope of ERISA preemption. It has been described by the Second Circuit Court of Appeals as "deliberately expansive" and "among the broadest that can be found in the law." *Geller GNY v. County Line Auto Sales, Inc.*, 86 F.3d 18 (2d Cir. 1996). In supporting his objection to preemption, however, Claimant notes that the purpose of ERISA is to protect employee recipients and to ensure a rapid

[2] Claimant, as a Plan participant, is the type of party who could bring a claim under Section 501(a) of ERISA, and his claims raise "right to payment" issues, as he challenges the determination under and the interpretation of the Plan. See *Neuroaxis Neurosurgical Associates, PC v. Cigna Healthcare of New York, Inc.*, No. 95-cv-3891, 1998 WL 160937 (EDNY, April 1, 1998). Second, as addressed further below, Claimant is not relying on any legal duty held by Respondents that is independent of the rights and duties springing from the Plan. See, e.g., *Enigma Management Corp. v. Multiplan, Inc.*, 994 F.Supp.2d 290 (EDNY, 2014).

resolution of issues regarding claims associated with funds owed under plans. Those purposes, Claimant argues, would be ill served here by a finding of preemption.

The grounds for ERISA preemption are set forth in the statute's statement of purpose and intent. 29 U.S.C. §1001. As Claimant has noted and as the courts have explained in applying that legislative instruction, the purpose of ERISA is to protect employee benefits. This is achieved, however, not only through the fiscal and fiduciary obligations under ERISA but also through the required administrative structure for review of benefit issues and through ERISA's civil enforcement processes. The federal interests under ERISA, therefore, also are to protect the integrity of its carefully structured regulatory scheme and to achieve uniformity in the way claims are considered and reviewed. Such uniformity is important for the consistency of the protections and also because allowing parallel state actions "could expose multi-state employers to several different standards simultaneously, thereby transgressing a central ERISA goal of protecting the planning interests of contributing employers." *Gerosa v. Savasta & Company, Inc.*, 329 F.3d 317 (2d Cir. 2003), citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990).

Thus, the principle of federal preemption applies to the breach of contract claim, which goes directly to the determination of benefits and should be assessed as part of the uniform ERISA structure. Preemption also applies to the claim of fraudulent misrepresentation. That claim is akin to the claim of fraudulent inducement asserted in *Ullrich v. Linotype-Hell*, 187 F.Supp.2d 68 (EDNY, 2002), wherein the court concluded, "Permitting Plaintiff to maintain his fraudulent inducement claim when the gravamen of that claim rests on a factual determination of the provisions of the Plan and the permissibility of purported amendments thereto, both of which are subject to the provisions of ERISA, would not promote uniformity of the laws governing such plans." *See also Enigma Management Corp. v. Multiplan, Inc.*, 994 F.Supp.2d 290 (EDNY, 2014) ("The Second Circuit has held that state common law claims of fraudulent misrepresentation are preempted by ERISA if the false representation concerns the existence, terms, or benefits of an ERISA plan.")

Claimant contends that Respondents had a legal duty, separate from ERISA, not to misrepresent the nature of the Plan or the calculation of benefits, but this is not the type of legal duty that has led courts to allow state-law tort claims to proceed. The independent-duty analysis is based upon the test set forth in *Davila*, which, as noted above, is inapplicable here. Even if it did apply, however, no reading of the instant claims reflects a legal duty separate from the Respondents' obligations under ERISA. State-law causes of action have been allowed to proceed when the legal duty that was violated stands outside the structure of the plan and ERISA and instead implicates obligations that exist in an entirely separate legal construct. An example, the Second Circuit in *Geller* rejected the theory of complete preemption and declined to remove a common-law fraud action that had been brought by fund trustees to recover monies expended for an individual whom a participating employer had fraudulently identified as an employee. Similarly, in *Gerosa*, various state-law claims brought by pension-fund trustees against their actuary were permitted to proceed. In analyzing ERISA preemption doctrine, the Second Circuit in *Gerosa* focused on the relationships and obligations among "core ERISA entities" (the plan, trustees,

employers, administrators, participants, and beneficiaries), for which ERISA customarily prevails, as contrasted with state-law actions that do not affect relationships among these entities. Thus, the Court noted, "garden-variety state-law malpractice or negligence claims against non-fiduciary plan advisors, such as accountants, attorneys, and consultants, are not preempted." The instant case presents claims that focus on and spring from the ERISA-based relationship and obligations among the Claimant/participant, the Respondent/employer, the Plan, and the Plan administrators. Accordingly, Claimant's argument regarding independent legal duties forms no basis upon which he may avoid the broad sweep of ERISA preemption

As a final point, Claimant argues that, if he were to use the Plan's ERISA-based mechanisms to challenge the amount of severance pay, Respondents would argue that such a challenge is barred under the Release. The Release, however, explicitly exempts from release "any rights or claims . . . that may arise after" Claimant has signed the Release or "under the terms of the Notice Letter," which is what an erroneous payment following execution of the Release would have been. The Arbitrator therefore is not persuaded by Claimant's argument that a finding that these claims are preempted by ERISA would deprive him of any forum in which to assert his claim that he is entitled to a greater severance payment. In fact, Respondents have asserted in their reply to Claimant's opposition papers that, as the Release carves out claims arising after execution of the Release, "there is no reason to believe Respondent would argue the Claims, if properly brought as ERISA claims, were released." Respondents' Reply Brief, page 2, footnote 3.

For all of the reasons stated, the Arbitrator finds that, if this matter were arbitrable, the claims nonetheless would be subject to dismissal, as both are preempted by ERISA.

**ORDER ON MOTION TO DISMISS**

THE UNDERSIGNED ARBITRATOR, having been duly designated and appointed in accordance with the rules and procedures of the American Arbitration Association ("Association") and the terms of the parties' Binding Arbitration Agreement dated January 22, 2015; having been duly sworn, having accepted all facts alleged by Claimant as true, and having given full and fair consideration to all arguments and authorities presented pursuant to the process for consideration of Respondents' Motion to Dismiss ("Motion"); Claimant having been represented by Benjamin D. Weisenberg, Esq., of The Ottinger Firm, PC, 401 Park Avenue, New York, New York; and Respondents having been represented by Brendan T. Killeen, Esq., Melissa D. Hill, Esq., and Sarah L. Huff, Esq., of Morgan Lewis & Bockius, LLP, 101 Park Avenue, New York, New York 10178, hereby ORDERS the following regarding the Motion:

1. Pursuant to leave granted in accordance with the Paragraph 7(e) of the Arbitration Agreement and Rule 27 of the Association's Employment Arbitration Rules, Respondents submitted a Motion to Dismiss seeking dismissal of all claims. Claimant received a full and fair opportunity to respond in detail to same, both in writing and in oral argument, which was held on April 1, 2019, by telephonic conference call.

2. Based upon a thorough review of the detailed arguments presented by the parties pursuant to the cited rules and construing the Claimant's Statement of Claim liberally in his favor and accepting all Claimant's factual allegations as true, the Arbitrator concludes that the Motion to Dismiss must be granted, as follows:

a. Arbitrator finds that the claims asserted in the Demand and Statement of Claim are, under the explicit terms of the parties' Arbitration Agreement, excluded from the arbitral forum. Accordingly, this Arbitrator lacks the necessary contractual authority to hear and decide these claims.

b. The Arbitrator further finds that, even if these matters were properly before her in this arbitral forum, the claims presented would be preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq*., and, on that basis, would be dismissed.

3. For the reasons stated, Respondents' Motion to Dismiss is granted in full, and all claims are hereby dismissed.

4. In accordance with the parties' Binding Arbitration Agreement and the Rules and procedures of the Association, the compensation of the Arbitrator, totaling $14,520.00, and the administrative fees of the Association, totaling $2,950.00, with the exception of the $100.00 filing fee paid by Claimant, shall be borne by Respondent JP Morgan Chase & Co.

5. The foregoing is in full and final disposition of all claims asserted in this proceeding. Any claims not expressly addressed herein are hereby dismissed.

**D**ated: April 30, 2019

Jacquelin F. Drucker, Esq.
Arbitrator

**AFFIRMATION**

STATE OF NEW YORK

SS:

COUNTY OF NEW YORK

I, Jacquelin F. Drucker, an attorney admitted to the practice of law in the State of New York, affirm pursuant to CPLR Section 2106 and under penalty of perjury that I am the Arbitrator in the foregoing matter and that this document, which I have executed on this date, is my Order in this matter, issued in compliance with my oath and with all applicable laws, rules, and agreements.

Dated: April 30, 2019

Jacquelin F. Drucker, Esq.