UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
Richard Sunwoo,                                       :
                                                      :
                             Plaintiff,               :
                                                      :
              - against -                             :
                                                      :
                                                      :
JPMorgan Chase & Co., JPMorgan Chase                  :
Bank, National Association, and JPMorgan              :
Chase Severance Pay Plan Administrator, and           :
Does 1-50,                                            :
                                                      :
                             Defendants.              :
                                                      :
------------------------------------------------------X

```
┌──────────────────────────────────┐
│ USDC SDNY                         │
│ DOCUMENT                          │
│ ELECTRONICALLY FILED              │
│ DOC #: _____             │
│ DATE FILED: __6/15/2021__         │
└──────────────────────────────────┘
```

20-CV-5410 (VSB)

**<u>OPINION & ORDER</u>**

<u>Appearances</u>:

Robert Walter Ottinger, Jr.
Benjamin D Weisenberg
The Ottinger Firm, P.C.
New York, NY
*Counsel for Plaintiff*

Melissa D Hill
Tyler James Hill
Morgan, Lewis & Bockius LLP
New York, NY
*Counsel for Defendants*

<u>VERNON S. BRODERICK, United States District Judge</u>:

       Plaintiff Richard Sunwoo ("Plaintiff") brings this action against Defendants JPMorgan

Chase & Co. ("JPMC"), JPMorgan Chase Bank, National Association ("JPMCNA"), JPMorgan

Chase Severance Pay Plan Administrator ("JPMCSPPA"), and Does 1–50, unascertained

individuals who are and/or were in active control and management of JPMC and regulated the

employment of persons employed by JPMC (collectively, "Defendants"), for:  (1) breach of a

September 3, 2018 Release Agreement between Defendants and Plaintiff; (2) fraudulent

misrepresentation; and (3) improper denial of benefits under JPMC's Severance Plan, pursuant to

the Employee Retirement Income Security Act ("ERISA") of 1974, § 502 *et seq.*, 29 U.S.C. §

1132 *et seq*.  Before me is Defendants' motion to dismiss Plaintiff's Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6).  Plaintiff requests that I deny Defendants' motion or,

in the alternative, grant him leave to amend his complaint.

Because Plaintiff's state law claims essentially emanate from and require review and

analysis of JPMC's Severance Plan so as to require ERISA preemption and Plaintiff has failed to

state a remaining claim for relief under ERISA, Defendants' motion is GRANTED.  Plaintiff's

request for leave to file an amended complaint is DENIED without prejudice to refiling his

request accompanied by a proposed amended complaint.

## I.   **Factual Background**[1]

Plaintiff began his employment with Defendant JPMC in 2002 and, after several

promotions, assumed the role of Private Client Advisor.  (Doc. 1, Compl. 2, ¶ 5.)[2]  On August 3,

2018, Plaintiff received a notice of termination from Defendant JPMC informing him that his

employment with the company would end on September 16, 2018, due to changes in staffing

needs ("Notice Letter").  (*Id*. at 3, ¶ 1.)  This Notice Letter states, in relevant part:

> If you do not secure a position within the Firm by your termination date, provided
> you comply with your employment obligations described herein, you will be
> eligible for a payment equal to 48 weeks of severance-eligible compensation, based
> on annual eligible compensation of $400,000, reduced by any non-working notice
> period, in accordance with the terms of the Severance Plan.  Your severance
> payment will be paid to you in one lump sum, provided that you timely execute the

---

[1] The facts set forth herein are taken from the allegations contained in the Complaint and the documents referenced
therein.  (Doc. 1; *see also* Docs. 22, 28.)  I assume Plaintiff's allegations in the Complaint to be true for purposes of
this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  However, my reference
to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Compl." refers to Plaintiff's Complaint filed on July 14, 2020.  (Doc. 1.)

Release Agreement ("Release"), and further provided you comply with your employment obligations described herein.

The severance pay and related benefits and services outlined in this letter (which are conditioned upon signing the Release), exceed any pay and/or benefits you would be eligible to receive if you do not sign the Release.

If the Firm receives your executed Release within the required time frame, subject to your compliance with your employment obligations described herein, your severance payment will be made within two regularly-scheduled pay periods after your termination date.

. . .

If for any reason the number of weeks of severance pay described in this letter differs from the number of weeks that you are eligible to receive under the Severance Plan, you will receive the number of weeks specified in the Severance Plan.

(*Id*.; Doc. 28, Pl.'s Decl. Ex. 1, at 1–2.)[3]

The Severance Plan referenced in the Notice Letter is governed by ERISA, and provides

for a Plan Administrator with

full, sole and absolute discretion to interpret and administer the Plan, including, but not limited to determining whether an eligible termination has occurred, whether the circumstances of any particular separation makes payment of severance pay under the Plan appropriate, the amount of severance pay, and the form of the Release Agreement to be signed by the participating employees. . . . The decisions of the Plan Administrator or its delegates shall be final and binding on all employees.

(Doc. 22, Hill Decl. Ex. A, at 15, 13.)[4]  "The Plan Administrator has delegated to Corporate

Employee Relations Americas the authority to decide initial claims under the Plan."  (*Id*., Ex. A,

at 11.)  Employees eligible for severance pay under the Plan are entitled to receive "a number of

weeks of severance pay calculated based upon [their] Eligible Compensation and years of

---

[3] "Pl.'s Decl." refers to the Declaration of Plaintiff in support of his opposition to Defendants' motion to dismiss, filed November 16, 2020.  (Doc. 28.)

[4] "Hill Decl." refers to the Declaration of Melissa D. Hill in support of Defendants' motion to dismiss, filed October 6, 2020.  (Doc. 22.)

Continuous Service as of [their] termination date," (*id.*, Ex. A, at 8), subject to the following formula:

> For salaried employees, your weekly base salary, including any applicable shift differential and language differential, but excluding all bonuses, commissions, overtime, and other forms of special or incentive remuneration. This amount is multiplied by 52 to determine your annual eligible compensation.
>
> Note: Compensation greater than $400,000 per year is disregarded for purposes of determining Eligible Compensation.

(*Id.*, Ex. A, at 5.) Included in the Plan is a table for ascertaining the number of weeks of severance due based upon an employee's years of service. (*Id.*, Ex. A, at 8.) The Plan unambiguously provides that "[o]nly the official Plan documents are used to determine severance pay eligibility or resolve claims disputes." (*Id.*, Ex. A, at 13.) The means of contesting a severance pay decision by the Administrator is detailed in the Plan: an employee who disputes the amount of severance pay received "may write to Corporate Employee Relations," although a written claim "received more than 60 days after the event giving rise to the claim will be denied." (*Id.*, Ex. A, at 11.) An employee whose initial claim for severance pay is denied "may appeal the decision in writing to the Plan Administrator" within 60 days of the denial. (*Id.*, Ex. A, at 12.)

After receiving the Notice Letter, Plaintiff spoke by telephone with an authorized representative of Defendants, who stated that the call was being conducted on a recorded line. (Compl. 3, ¶¶ 2–3.) The representative clearly and repeatedly confirmed, at Plaintiff's request, that Plaintiff would receive forty-eight weeks of pay calculated upon an annual eligible base compensation of $400,000—that is, $369,230.77—in exchange for executing the Release Agreement described in the notice letter. (*Id.* at 3–4, ¶¶ 4–5.)

On September 3, 2018, Plaintiff entered into a Release Agreement ("Release") with

JPMC, pursuant to which he released all claims related to his employment with the company in

exchange for the severance payment described in the Notice Letter.  (*Id*. at 4, ¶ 6.)  The Release

states, in relevant part, that:

> I, Richard Sunwoo (U432310), sign this Release Agreement ("Release") in exchange for the severance pay, severance related benefits and career services described in the Notice Letter to me dated August 3, 2018 (the "Notice Letter"). The notice letter is incorporated into this release by reference.
>
> I understand that this Release will be binding on me, my heirs, assigns, representatives and estate.  I hereby release JPMorgan Chase & Co. (and any predecessor or successor entities thereof), . . . any fiduciaries of any employee benefit plan (collectively, the "Company") from all liability for any claims or potential claims relating to my employment with the Company and/or the termination of my employment, subject to the exceptions listed below.  I understand that "claims" includes claims I know about and claims I do not know about, as well as the continuing effects of anything that happened before I sign below.
>
> The claims covered by this Release include but are not limited to the following, to the extent such claims may be waived or released under applicable law:
>
> - any claims under any federal, state or local law, including, but not limited to, . . . the Employee Retirement Income Security Act of 1974 ("ERISA") including, but not limited to, breach of fiduciary duty and equitable claims arising under 1132(a)(3) of ERISA, . . .
>
> The following are claims that I am <u>not</u> releasing:
>
> - any rights or claims . . . (ii) under the terms of the Notice Letter . . .

(*Id*.; Pl.'s Decl. Ex. 2.)  The Release provided for a seven-day window after signing for Plaintiff

to revoke his agreement to the Release.  (*Id*., Ex. 2, at 5.)  According to the terms of the Release,

the "Release and the Notice Letter set forth the entire agreement and fully supersede any and all

prior agreements or understandings between the Company and [Plaintiff]" and could not be

"altered, amended, modified, superseded, canceled or terminated except by an express written

agreement signed by both the Company and [Plaintiff]."  (*Id*.)  The Release also advised that

Plaintiff "discuss this Release with an attorney of [his] choosing (at [his] own expense) prior to the execution of this Release."  (*Id.*)  By signing, Plaintiff confirmed that he had "read this Release, under[stood] it, agree[d] to it and sign[ed] it knowingly and voluntarily," and that he was "given a reasonable period of time (at least forty-five (45) calendar days) to review, consider and sign this Release."  (*Id.*)

According to an April 14, 2020 letter from Defendants, (Pl.'s Decl. Ex. 5), Plaintiff was provided a notice on September 7, 2018 "which indicated an earlier administrative error in calculation of the number of weeks of severance to which he [was] entitled (the 'Revised Notice')."  This Revised Notice purportedly "indicated that Mr. Sunwoo was entitled to 40 weeks of severance, which matched the timeframe for employees with Eligible Compensation of Less than $150,000/Year and the Revised Notice referenced page 8 of the Plan."  (*Id.*, at 2.)[5]

Plaintiff did not revoke the Release within the seven-day window after signing the agreement; the Release therefore became irrevocable on September 11, 2018.  (Compl. 6, ¶ 12.) Plaintiff fully performed all of the continuing obligations required of him under the Release that would entitle him to the full amount of payment.  (*Id.* at 6, ¶ 11.)   However, Defendants only paid Plaintiff $30,769 within two pay periods of his September 16, 2018 termination date, a fraction of payment amount contemplated in the Notice Letter.  (*Id.* at 7, ¶ 14.)

Plaintiff spoke at least three times by telephone with authorized Customer Service Representatives at the designated telephone number provided in the Notice Letter, each of whom stated that the calls were being recorded.  (*Id.* at 3, ¶¶ 2–3.)  Plaintiff informed a representative

---

[5] Neither Plaintiff nor Defendants have produced a copy of the referenced Revised Notice.  Plaintiff appears to concede or at least does not deny receipt of the Revised Notice but simply states, in his opposition memorandum, that there is "no analysis or justification supporting Defendants claimed September 7, 2018, Revised Notice attempt to alter, amend, modify, and supersede the Release Agreement without first obtaining an express written agreement signed by both JPMC and Mr. Sunwoo."  (Pl.'s Opp. Mem. 18.)

that he had received only $30,769, as opposed to the $369,230.77 that he had expected.  (*Id*. at 7, ¶ 15.)  The authorized representative responded that she would speak with the appropriate JPMC individuals and be in touch as quickly as possible.  (*Id*.)  However, the authorized representative did not contact Plaintiff after this call.  (*Id*.)  Plaintiff made further attempts to speak with other JPMC representatives, but without success.  (*Id*.)

On December 4, 2018, Plaintiff initiated an arbitration against Defendants before the American Arbitration Association seeking to compel the payment of the alleged outstanding amount of $338,461.55.  (*Id*. at 7, ¶ 16.)  On April 30, 2019, Arbitrator Jacquelin Drucker dismissed Plaintiff's arbitration claim against Defendants.  (*Id*. at 7, ¶ 17.)  Arbitrator Drucker construed Plaintiff's request as a claim for additional benefits under the JPMC Severance Pay Plan, which the parties agreed was governed by ERISA.  (Pl.'s Decl. Ex. 3, at 5–6.)  She therefore reasoned that she lacked jurisdiction to resolve Plaintiff's claim under a Binding Arbitration Agreement executed by Plaintiff on January 22, 2015, which explicitly excluded from arbitration "'claims for benefits under a plan that is governed' by ERISA."  (*Id*., Ex. 3, at 7.)  Arbitrator Drucker further stated that, in any case, because Plaintiff's claims were state-law claims that were preempted by ERISA and therefore needed to be addressed through the specific ERISA-compliant administrative structure set forth in the Severance Plan, those claims were subject to dismissal.  (*Id*., Ex. 3, at 7–9.)

On December 3, 2019, Plaintiff filed a letter demand to JPMC Employee Relations, which the Company construed as a claim for severance benefits under the JPMC Severance Plan. (*See* Pl.'s Decl. Ex. 4, at 1.)  In a letter dated January 31, 2020 from Jeanne Austria of JPMC Employee Relations to Plaintiff's attorney ("January 31 Letter"), the Company denied Plaintiff's claim because it was untimely filed as well as on the merits.  (*Id*.)  The Company stated that

"[d]ue to an error, Mr. Sunwoo was initially incorrectly informed of the amount of severance for which he was eligible under the terms of the Plan, but he was informed of the correct amount shortly thereafter," namely, "$36,553.82 in gross severance benefits." (*Id.*) The letter explains that this amount was calculated off Plaintiff's "sixteen years of service" and weekly base salary of $913.85, excluding commissions, which under the Plan rendered him eligible for 40 weeks of severance pay, amounting to $36,553.82. (*Id.*) The Company denied Plaintiff's claim on the ground that Plaintiff's severance benefits "were correctly determined in accordance with the terms of the Plan." (*Id.*)

On April 14, 2020, Clarissa Ramos-Cafarelli, JPMC Managing Director and Head of Employee Engagement, Culture & Conduct – Advisory, issued Plaintiff a final decision affirming the denial of Plaintiff's demand for the alleged outstanding money ("April 14 Letter"). (Compl. 7, ¶ 18; Pl.'s Decl. Ex. 5.) According to this decision letter, "[a]fter [Plaintiff's counsel] contacted JPMC legal, and was instructed by JPMC legal to file a claim in accordance with the Severance Plan, [Plaintiff] instead initiated arbitration seeking to compel payment in accordance with the Notice Letter." (*Id.*, Ex. 5, at 2.) The Company once again reasoned that because the written demand was filed more than sixty days after its 2018 severance payment to Plaintiff, his appeal was untimely and could be denied on that basis alone. (*Id.*) Furthermore, the Company advised that Plaintiff's severance was paid in accordance with the express terms of the Severance Plan, which calculated eligible severance based on an employee's "Eligible Compensation and years of Continuous Service," as follows:

> Pursuant to the terms of the Plan, Mr. Sunwoo's severance was calculated based on 16 years of Continuous Service with Eligible Compensation under $150,000. As set forth in the Amount of Severance Pay chart on page 9 of the Plan, and in the Revised Notice dated September 7, 2018, Mr. Sunwoo was eligible for 40 weeks of severance. Mr. Sunwoo's weekly base salary was $913.85, and had sixteen years of service. He was therefore eligible for 40 weeks of severance pay, which equaled

a gross amount of $36,553.85.

(*Id.*, Ex. 5, at 3.)[6]  The documents the Administrator relied upon in denying Plaintiff's claim

were "1) the Notice, 2) the Revised Notice, 3) the release dated September 5, 4) the claim dated

December 3, 2019, 5) the appeal letter dated February 19, 2020, 6) a pay statement generated

1/31/20, 7) the salary profile statement generated 3/2/20, and 8) the Record History."  (*Id.*)  As

mentioned above, according to this denial letter, Plaintiff was provided a Revised Notice on

September 7, 2018 which "indicated that Mr. Sunwoo was entitled to 40 weeks of severance,

which matched the timeframe for employees with Eligible Compensation of Less than

$150,000/Year and the Revised Notice referenced page 8 of the Plan."  (*Id.*, Ex. 5, at 1.)  The

letter concluded that "severance amount was appropriately calculated under the Plan" and denied

Plaintiff's appeal, which it construed as an inappropriate request to "rewrite the Plan" by asking

for severance pay to be "based on compensation that includes amounts greater than base salary."

(*Id.*, Ex. 5, at 4.)

Plaintiff disputes the amount due, and alleges:  (1) breach of contract, entitling Plaintiff to

recover costs and expenses, including attorneys' fees (First Cause of Action); (2) fraudulent

misrepresentation, entitling Plaintiff to recover compensatory and punitive damages (Second

Cause of Action); and (3) entitlement to benefits under the Severance Plan with JPMC, pursuant

to ERISA (Third Cause of Action).

## II.    <u>Procedural History</u>

Plaintiff commenced this action by filing a Complaint on July 14, 2020.  (Doc. 1.)  On

October 6, 2020, Defendants filed the instant motion to dismiss, attaching various exhibits,

---

[6] Plaintiff neither disputes the accuracy of this description of his weekly base salary as $913.85 nor provides a description in his pleadings suggesting that his weekly base salary is anything other than $913.85.

including a summary of JPMC's Severance Pay Plan.  (Docs. 19–23.)  On October 8, 2021, Plaintiff filed a request for an extension of time to file a response to Defendants' motion, which I granted on October 9, 2021.  (Docs. 25, 26.)  In accordance with this extended briefing schedule, Plaintiff filed his opposition to Defendants' motion on November 16, 2020, (Docs. 27–28), and Defendants filed their reply on December 14, 2020, (Doc. 29).

### III.   Legal Standards

#### A.  *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor.  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Finally, although all allegations contained in the complaint are

assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* A complaint is "deemed

to include any written instrument attached to it as an exhibit or any statements or documents

incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.

2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.

1995)).

"Even where a document is not incorporated by reference, the court may nevertheless

consider it where the complaint 'relies heavily upon its terms and effect,' which renders the

document 'integral' to the complaint." *Id.* at 153 (quoting *Int'l Audiotext*, 62 F.3d at 72); *see,

e.g.*, *Zeuner v. Suntrust Bank Inc.*, 181 F. Supp. 3d 214, 218–19 (S.D.N.Y. 2016) (considering,

on a motion to dismiss alleging denial of severance benefits under an ERISA plan, the plan

document, claim denial letter, and appeal denial letter); *Guo v. IBM 401(k) Plus Plan*, 95 F.

Supp. 3d 512, 522 (S.D.N.Y. 2015) (considering the plan document, a beneficiary designation

form, and correspondence between the plaintiff's counsel and the plan fiduciaries that were

"essential to Plaintiff's ERISA claims"). "[W]here the language of a complaint is contradicted

by a written document that plaintiff artfully conceals from a court, the court may consider such a

document on a motion to dismiss." *Tulczynska v. Queens Hosp. Ctr.*, 17 Civ. 1669 (DAB), 2019

WL 6330473, at *5 (S.D.N.Y. Feb. 12, 2019).

## B.  *Rule 15(a)*

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a

complaint "shall be freely given when justice so requires." Courts permit amendment when "(1)

the party seeking the amendment has not unduly delayed, (2) when that party is not acting in bad

faith or with a dilatory motive, (3) when the opposing party will not be unduly prejudiced by the

amendment, and (4) when the amendment is not futile." *E*Trade Fin. Corp. v. Deutsche Bank*

*AG*, 420 F. Supp. 2d 273, 282 (S.D.N.Y. 2006); *see also Mackensworth v. S.S. Am. Merchant,* 28 F.3d 246, 251 (2d Cir. 1994) (noting that undue delay, bad faith, or futility of an amendment are valid grounds for denying leave to amend).  "Amendment is futile if the proposed amended complaint could not survive a motion to dismiss." *Soroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 147 (S.D.N.Y. 2012) (citing *Ricciuti v. New York City Transit Authority*, 941 F.2d 119, 123 (2d Cir.1991)).

    "In the absence of any identification of how a further amendment would improve upon the Complaint, leave to amend must be denied as futile." *Lopez v. Ctpartners Exec. Search Inc*., 173 F. Supp. 3d 12, 44 (S.D.N.Y. 2016) (quoting *In re WorldCom, Inc. Sec. Litig*., 303 F.Supp.2d 385, 391 (S.D.N.Y. 2004)); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (denying as futile a request to replead where the problem with the cause of action was "substantive" rather than the result of "inartful[]" pleading, and the movant suggested "no new material" to be plead).  Generally, then, "[i]n order to meet the requirements of particularity in a motion to amend, 'a complete copy of the proposed amended complaint must accompany the motion so that both the Court and opposing parties can understand the exact changes sought.'" *Zito v. Leasecomm Corp.,* No. 02 Civ.8072 GEL, 2004 WL 2211650, at *25 (S.D.N.Y. Sept. 30, 2004) (quoting *Smith v. Planas,* 151 F.R.D. 547, 550 (S.D.N.Y. 1993)).  However, the failure to file a proposed amended complaint "is not fatal where there is no undue prejudice to defendant."  *Fei v. WestLB AG*, No. 07CV8785(HB)(FM), 2008 WL 594768, at *2 (S.D.N.Y. Mar. 5, 2008).  Leave to amend may thus be granted notwithstanding a movant's failure to attach a proposed amended complaint if the movant provides the basis for the proposed amendments. *See, e.g*., *Segatt v. GSI Holding Corp*., No. 07 Civ. 11413(WHP), 2008 WL 4865033, at *4 (S.D.N.Y. Nov. 3, 2008) (granting leave to amend where the movant's papers adequately

12

explained the basis for, and nature of, the proposed amendment); *Murray v. New York*, 604 F. Supp. 2d 581, 588 (W.D.N.Y. 2009) (same); *cf. La Barbera v. Ferran Enter., Inc.*, Civil Action. No. 05–2678, 2009 WL 367611, at *3 (E.D.N.Y. Feb. 10, 2009) (denying motion for leave to amend where "Plaintiffs' papers provide[d] no clarification as to exactly what changes are sought").

Where proposed amendments are not attached to a motion for leave to amend, a court may deny such motion without prejudice to refile accompanied by a proposed amended complaint. *See, e.g.*, *Weaver v. IndyMac Fed. Bank, FSB*, 09-cv-5091 (LAP), 2019 WL 4563893, at *3 (S.D.N.Y. Sept. 9, 2019) (stating that the plaintiff's motion for leave to amend was denied "without prejudice to its refiling accompanied by a proposed amended complaint" on the basis that "Plaintiff did not submit a proposed amended complaint with that motion"); *Johnson v. Monsanto Chem. Co.*, 129 F. Supp. 2d 189, 197 (N.D.N.Y. 2001) (denying motion for leave to amend without prejudice to refile, where plaintiffs had not attached a proposed amended complaint to their motion).

IV.   **Discussion**

A.   *Defendants' Motion to Dismiss*

Defendants seek dismissal of Plaintiff's Complaint on the grounds that (1) ERISA preempts Plaintiff's state common law claims, and (2) Plaintiff cannot plausibly state a claim under ERISA that the JPMC Plan Administrator's decision to deny Plaintiff additional severance benefits was arbitrary or capricious. Because (1) Plaintiff's state law claims inextricably "relate to" an ERISA-governed Severance Plan, they are preempted by ERISA and accordingly dismissed, and (2) the Plan Administrator's denial of Plaintiff's administrative appeal was not arbitrary and capricious, his ERISA claim is likewise dismissed.

1.  **Breach of Contract and Fraudulent Misrepresentation Claims**
    **(First and Second Causes of Action)**

a.  <u>Applicable Law</u>

ERISA's "comprehensive legislative scheme includes an integrated system of procedures

for enforcement." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (internal quotation

marks omitted).  As the Supreme Court stated in *Pilot Life Ins. Co. v. Dedeaux*,

> the detailed provisions of [ERISA] § 502(a) set forth a comprehensive civil
> enforcement scheme that represents a careful balancing of the need for prompt and
> fair claims settlement procedures against the public interest in encouraging the
> formation of employee benefit plans.  The policy choices reflected in the inclusion
> of certain remedies and the exclusion of others under the federal scheme would be
> completely undermined if ERISA-plan participants and beneficiaries were free to
> obtain remedies under state law that Congress rejected in ERISA.  The six carefully
> integrated civil enforcement provisions found in § 502(a) of the statute as finally
> enacted . . . provide strong evidence that Congress did not intend to authorize other
> remedies that it simply forgot to incorporate expressly.

481 U.S. 41, 54 (1987) (internal quotation marks omitted).  Accordingly, ERISA expressly

supersedes "any and all State laws insofar as they may now or hereafter relate to any employee

benefit plan" covered by the statute, 29 U.S.C. § 1144(a), such that "any state-law cause of

action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts

with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-

empted," *Davila*, 542 U.S. at 209.

A state law "relates to an ERISA plan if it has a connection with or reference to such a

plan." *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001) (internal quotation marks

omitted).  Laws that have been preempted "are those that provide an alternative cause of action

to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply

solely to them, or interfere with the calculation of benefits owed to an employee." *Aetna Life*

*Ins. Co. v. Borges*, 869 F.2d 142, 146 (2d Cir. 1989); *see also Sandler v. New York News Inc.*,

721 F. Supp. 506, 513 (S.D.N.Y. 1989).  However, "[s]tate law claims whose effect on employee

benefit plans is merely tenuous, remote or peripheral are not preempted." *DaPonte v. Manfredi Motors, Inc*., 335 F. Supp. 2d 352, 359 (E.D.N.Y. 2004), *aff'd*, 157 F. App'x 328 (2d Cir. 2005) (citation omitted).  For instance, a claim whose resolution "will neither determine whether any benefits are paid nor directly affect the administration of benefits under the plan" does not require preemption.  *Sandler*, 721 F. Supp. at 512 (internal quotation marks omitted); *see also Borges*, 869 F.2d at 146 (noting that state laws that have not been preempted are "laws of general application—often traditional exercises of state power or regulatory authority—whose effect on ERISA plans is incidental").

This rule of preemption applies to state common-law actions.  *See, e.g*., *Pilot Life*, 481 U.S. at 48 (deeming preempted common law claims that were "based on alleged improper processing of a claim for benefits under an employee benefit plan"); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990) (deeming preempted state common law claim that an employee was unlawfully discharged to prevent his attainment of benefits under a plan covered by ERISA on basis that the "cause of action makes specific reference to, and indeed is premised on, the existence of a pension plan").  In line with this reasoning, "ERISA preempts state common law claims of fraudulent or negligent misrepresentation when the false representations concern the existence or extent of benefits under an employee benefit plan."  *Cicio v. Does*, 321 F.3d 83, 96 (2d Cir. 2003) (affirming dismissal of misrepresentation claims that rested on an allegation that the defendant "had an obligation under the terms of the plan to provide benefits that it failed to provide" and thus "[sought] to vindicate rights accruing under the plan"), *judgment vacated on separate grounds sub nom. Vytra Healthcare v. Cicio*, 542 U.S. 933 (2004); *see also Chau v. Hartford Life Ins. Co*., 167 F. Supp. 3d 564, 572 (S.D.N.Y. 2016) ("it has long been clearly established that allegations of common-law fraud associated with a failure to pay

benefits are preempted").  Similarly, "it has long been established in this Circuit that breach of contract claims arising from a failure to pay benefits under an ERISA plan are preempted." *Chau*, 167 F. Supp. 3d at 572 (dismissing quasi-contract claim arising out of plaintiff's "demand that [the plan administrator's] decision be reversed, and that [plaintiff] be paid her benefits"); *see also, e.g.*, *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) (collecting cases).

          b.  <u>Application</u>

          i.  *Breach of Contract Claim*

The gravamen of Plaintiff's contract claim is that Defendants "breached their obligations under the Release Agreement by failing to pay Mr. Sunwoo the $369,230.78 owed to him pursuant to the terms of the Release Agreement and the incorporated Notice Letter." (Compl. 8, ¶ 22.)  Because Plaintiff's contract claim necessarily implicates benefits determinations under JPMC's ERISA-governed Severance Plan, it "provide[s] an alternative cause of action to employees to collect benefits protected by ERISA," and is thus plainly preempted by ERISA. *Borges*, 869 F.2d at 146.

Indeed, the Release Agreement upon which Plaintiff's breach of contract claim relies "refer[s] specifically" to JPMC's ERISA plan and the amount of benefits Plaintiff was due under it. *Id*.  While Plaintiff is correct to note that the Release Agreement incorporates the Notice Letter, the Notice Letter in turn references and relies upon the terms of the JPMC Severance Plan.  As the Notice Letter states, Plaintiff's eligibility for "a payment equal to 48 weeks of severance-eligible compensation, based on annual eligible compensation of $400,000, reduced by any nonworking Notice Period" was to be made "in accordance with the terms of the Severance Plan." (Pl.'s Decl. Ex. 1, at 1.)  Furthermore, the Notice Letter clearly provides that

"[i]f for any reason the number of weeks of severance pay described in this letter differs from the number of weeks that you are eligible to receive under the Severance Plan, you will receive the number of weeks specified in the Severance Plan."  (*Id*., Ex. 1, at 2.)  In other words, by the very provisions of the Release Agreement, the amount that Plaintiff was eligible to receive under the Severance Plan controls and supersedes the amount described in the Notice Letter.  Because this dispute over the amount of severance payment due is the core of Plaintiff's breach of contract cause of action, adjudication of his claim would inextricably involve reference to the Plan language and requirements—making it fall within the very category of claims consistently preempted by ERISA.  *See Ingersoll-Rand*, 498 U.S. at 140 ("Because the court's inquiry must be directed to the plan, this . . . cause of action 'relate[s] to' an ERISA plan.").

Plaintiff argues that his breach of contract claim is not preempted as it involves a dispute over the amount of payment due, rather than his right to payment under the Severance Plan, and therefore implicates duties separate and apart from ERISA.  Plaintiff dwells upon a distinction drawn in this Circuit between "right to payment" claims and "amount of payment" claims—"that is, on the one hand, claims that implicate coverage and benefits established by the terms of the ERISA benefit plan, and, on the other hand, claims regarding the computation of contract payments or the correct execution of such payments."  *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 331 (2d Cir. 2011).  The former claims are considered to fall within the domain of ERISA, "while the latter are typically construed as independent contractual obligations."  *Id.*; *see also Neuroaxis Neurosurgical Assocs., PC v. Cigna Healthcare of New York, Inc*., No. 11 Civ. 8517 BSJ AJP, 2012 WL 4840807, at *4 (S.D.N.Y. Oct. 4, 2012).  Where a claim sounds in "right to payment," it is preempted by ERISA unless "some other, completely independent duty forms *another* basis for legal action."  *Montefiore*, 642 F.3d at 332.  Plaintiff

frames his contract claim as an "amount of payment" dispute not requiring preemption, in that the "Release Agreement standing alone provides a definitive answer as to the correct lump sum amount" and so in issuing a payment lower than that amount, Defendants breached an obligation separate from that under the Severance Plan.  (Doc. 27, Pl.'s Opp. Mem. 16)[7].

Plaintiff's attempt to distinguish the instant cause of action from the sort of "right to payment" claims preempted by ERISA is unavailing, because his breach of contract claim clearly implicates his entitlement to payment under the JPMC Severance Plan.  As stated above, the Release Agreement clearly references and incorporates the terms of the Severance Plan. Resolving Plaintiff's claim would involve determining the number of weeks of pay that Plaintiff was due, the amount included in his weekly base salary for purposes of calculating his entitlement under the Plan, and the timeliness of Plaintiff's claim disputing the amount due—all inquiries that involve reference to the provisions set forth in the Plan.  To perform this analysis under the premise of adjudicating a state-law breach of contract claim would be to second guess the Administrator's calculation of benefits under Defendants' ERISA Plan and undeniably interfere with its sound administration.  *See Borges*, 869 F.2d at 146.

The cases Plaintiff cites in support of his argument, (*see* Pl.'s Opp. Mem. 14), only serve to underscore that his breach of contract claim falls within the purview of ERISA.  *Neuroaxis* involved state law claims that a healthcare provider was denied full payment because the defendant insurer "did not obey an internal policy specifically used for calculating reimbursement rates with out-of-network providers when no provider agreement had been negotiated."  2012 WL 4840807, at *4.  "To resolve this claim of underpayment," the court had

---

[7] "Pl.'s Opp. Mem." refers to Plaintiff's memorandum of law in opposition to Defendants' motion to dismiss, filed November 16, 2020.  (Doc. 27.)

to "look to the plan" to determine the propriety of the payment made.  *Id*.  The court thus

surmised that this was "a classic 'right to payment'—not 'amount of payment'—determination"

and therefore preempted by ERISA.  *Id*. at *4–5.  Similarly, *Enigma Mgmt. Corp. v. Multiplan,*

*Inc*., 994 F. Supp. 2d 290 (E.D.N.Y. 2014), involved unjust enrichment claims that an insurer

incorrectly failed to provide full payment on claims for health care services based on a

determination that the provider had not provided adequate proof of payment documentation.  An

ERISA-governed plan laid out "the procedures that participants must follow to file claims for

benefits when they receive services from a nonnetwork provider" and set forth "an appeals

process if [the insurer] denie[d] the claim in whole or in part."  *Id*. at 299.  The court found that

the plaintiff's state-law claims were in essence "right to payment" claims preempted by ERISA,

reasoning the following:

> In a literal sense the parties disagree on the *amount* that [the defendant] is required
> to pay on [the plaintiff's] claims, but they only disagree because [the plaintiff]
> asserts that [the defendant] does not have the *right* to full payment under the terms
> of the ERISA plan.  The court will need to interpret the plan to determine what
> payments the participants were required to make.

*Id*. at 300.

Similarly, the instant cause of action is too, at bottom, a claim that Plaintiff was denied

the right to full payment under a plan governed by ERISA.  JPMC's Severance Plan governs

Plaintiff's entitlement to severance payment in the first instance and sets forth a comprehensive

procedure for appealing disputes as to rights to payment; the key to resolving Plaintiff's breach

of contract claim lies in the Plan.  Although Plaintiff attempts to frame his claim as an "amount

of payment" dispute grounded in the Release Agreement, this distinction is merely semantic:  as

discussed above, interpretation of the Release Agreement ultimately leads back to scrutiny of

Plaintiff's rights under the Severance Plan.  Tellingly, Plaintiff has not alleged that Defendants

miscalculated the amount of money owed to him under the Release Agreement, as is characteristic of "amount of payment" cases. *See Neuroaxis*, 2012 WL 4840807, at \*4. Rather, because Plaintiff's claim involves inquiry into his fundamental right to payment under the Plan, it is more aptly deemed an "improper processing" claim, mandating preemption. *Pilot Life*, 481 U.S. at 47–48 (deeming preempted state law claims seeking damages for failure to provide benefits under an insurance policy).

ii.    *Fraudulent Misrepresentation Claim*

I next turn to Plaintiff's fraud claim. The pertinent question is "whether the alleged misrepresentations relate directly to [Plaintiff's] benefits under Defendants' [] benefits plan." *DaPonte v. Manfredi Motors, Inc.*, 335 F. Supp. 2d 352, 359 (E.D.N.Y. 2004), *aff'd*, 157 F. App'x 328 (2d Cir. 2005). Because the facts compel me to answer this question in the affirmative, I find that Plaintiff's second cause of action is preempted by ERISA.

In essence, Plaintiff contests the sum due under the terms of JPMC's Severance Plan. Although Plaintiff styles his claim as one sounding in fraudulent misrepresentation, resolution of this claim—like Plaintiff's breach of contract cause of action—ineluctably returns me to the terms of the Plan itself. As discussed above, the question of whether Defendants were bound to pay Plaintiff the amount described in the Release Agreement turns on whether that was the appropriate amount due under the Severance Plan. *See Chau*, 167 F. Supp. 3d at 571–72 (finding state law claims preempted where each claim made "express reference to the process used to make the [challenged] decision under the Plan"). Moreover, Plaintiff's fraud claim "expressly seeks the same relief that [Plaintiff] seeks pursuant to [his] claim under ERISA," *id.* at 572—that is, "damages in an amount equal to the difference between the amounts JPMC [represented that Plaintiff was eligible to receive in the Release Agreement and Notice Agreement] and the

amount actually issued to [Plaintiff] as an economic loss arising from [Defendants' alleged fraudulent misrepresentation]," (Pl.'s Opp. Mem. 14).  Plaintiff's fraud claim is at its core a claim for recovery based upon improper denial of benefits under the Plan.  "Alternative state law-based suits such as these, brought to recover benefits from a covered plan, are preempted precisely because they directly concern the primary administrative function of benefit plans—the provision of benefits."  *Sandler*, 721 F. Supp. at 513 (internal citation and quotation marks omitted).

Relying on *DaPonte* for the proposition that "[w]hen a plaintiff, in reliance on his employer's statements concerning benefits, takes or fails to take some action that does not directly involve benefits, the harm to the plaintiff consists of economic loss, and not simply loss of coverage," Plaintiff argues that his cause of action is distinct from and therefore not preempted by ERISA.  335 F. Supp. 2d at 361.  In Plaintiff's view, the Release Agreement he signed was not "limited in scope" to the administration of the Severance Plan but granted JPMC "valuable contractual rights and post-employment covenants binding [Plaintiff] that were entirely unrelated to Defendants' [Plan]."  (Pl.'s Opp. Mem. 12.)  Namely, Plaintiff points to the fact that he agreed as a condition of signing the Release to refrain from soliciting JPMC's clients for a twelve-month period after the termination of his employment.  (*Id*.)  Plaintiff therefore argues that he seeks separate relief for a "personal harm arising from [Defendants'] fraudulent conduct" distinct from relief sought under the Plan, such that resolution of that claim "would not directly affect the primary administration of benefits . . . under the plan."  (*Id*. at 12, 14) (citing *DaPonte*, 335 F. Supp. 2d at 361).

Plaintiff's argument misses the mark and the cases that Plaintiff enlists in support of his argument against preemption—*Sandler* and *DaPonte*—are inapposite to the instant claim.  Both

cases involved unusual circumstances compelling a departure from the norm that fraud claims relating to benefit plans are preempted by ERISA.  *See DaPonte*, 335 F. Supp. 2d at 358 (noting that "most courts in the Second Circuit have held that [claims alleging benefit-related fraud or misrepresentations] 'relate to' a benefit plan and are therefore preempted"); *Sandler*, 721 F. Supp. at 512 (distinguishing "the many common law tort and contract actions, typically brought against plan administrators or plan insurers, that are held preempted because they seek recovery based upon improper denial of benefits under a plan or policy").  The fraudulent misrepresentation claim in *DaPonte* concerned an employee's agreement to reemployment, which he would not have acceded to had the defendants disclosed that he would be ineligible for health benefits within ninety days of commencing employment.  335 F. Supp. 2d at 360.  *Sandler* involved an employee's reliance on a pension manager's misrepresentation of the pension benefits he would receive if he accepted early retirement, leading to his voluntary resignation. *Sandler*, 721 F. Supp. at 508–9.  As the *DaPonte* court remarked of both cases, "the plaintiffs . . . were receiving no plan benefits, and made major employment decisions—to commence or terminate employment—based on their employers' false promises of future benefits."  335 F. Supp. 2d at 360.  In contrast, where a plaintiff "made a less monumental employment decision— to transfer to an affiliate office—and in so doing, attempted to supplement the benefits he already was receiving," the *DaPonte* court agreed that his was a fraudulent misrepresentation claim relating to a benefit plan rather than a collateral agreement, mandating preemption.  *Id*. (citing *Smith v. Dunham-Bush, Inc*., 959 F.2d 6 (2d Cir. 1992)).

Unlike Sandler and DaPonte, Plaintiff has not alleged that he made any major employment decisions such as commencing, declining or terminating employment in reliance on Defendants' purported misrepresentations.  His employment had already been terminated at the

time that he received the Notice Letter and his only remaining decision was whether or not to sign the Release Agreement.  Nor has Plaintiff pled that he would not have chosen to forego the ability to solicit JPMC's clients for twelve months after the termination of his employment had Defendants described a lesser sum in the initial Notice Letter.  Plaintiff's fraud claim is therefore indiscernible from a claim for additional benefits under the Plan, which is squarely preempted by ERISA.

Accordingly, Defendants' motion to dismiss Plaintiff's state law claims (First and Second Causes of Action) is hereby GRANTED.

### 2.   ERISA Claim (Third Cause of Action)

#### a.   Applicable Law

"A denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  The JPMC Severance Plan provides the administrator with "full, sole and absolute discretion to interpret and administer the Plan, including, but not limited to determining whether an eligible termination has occurred, whether the circumstances of any particular separation makes payment of severance pay under the Plan appropriate, the amount of severance pay, and the form of the Release Agreement to be signed by the participating employees."  (Hill Decl. Ex. A, at 13.)

Where, as here, a plan grants the administrator discretionary authority, a deferential standard of review is appropriate.  *McCauley v. First Unum Life Ins. Co*., 551 F.3d 126, 132 (2d Cir. 2008).  "Under the deferential standard, a court may not overturn the administrator's denial of benefits unless its actions are found to be arbitrary and capricious, meaning without reason,

unsupported by substantial evidence or erroneous as a matter of law." *Id*. (internal quotation marks omitted). Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and . . . requires more than a scintilla but less than a preponderance." *Celardo v. GNY Auto. Dealers Health & Welfare Tr*., 318 F.3d 142, 146 (2d Cir. 2003) (citation omitted). "Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." *McCauley*, 551 F.3d at 132 (citation omitted). That said, a decision may be found arbitrary and capricious where an administrator "imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words." *Id*. at 133 (internal quotation marks omitted).

b. <u>Application</u>

In opposition to Defendants' motion to dismiss his ERISA claim, Plaintiff argues principally that the Plan Administrator's denial of his administrative appeal was arbitrary and capricious because it ignored the Notice Letter's statement, integrated into the Release Agreement, that he would receive 48 weeks of severance-eligible compensation, based on annual eligible compensation of $400,000. (Pl.'s Opp. Mem. 17–18.) I disagree. In view of (1) Plaintiff's failure to timely appeal the Administrator's decision and (2) the Notice Letter's express provision that the terms of the Plan, and not the Notice Letter and the sum described in that letter, would ultimately govern the amount of severance payment Plaintiff was entitled to receive, I cannot conclude that the Administrator's denial of Plaintiff's administrative appeal was "arbitrary and capricious . . . unsupported by substantial evidence or erroneous as a matter of law." *McCauley*, 551 F.3d 132.

As the Plan makes clear, an employee disputing the amount of severance benefits was to

file a written claim with Corporate Employee Relations within 60 days of the event giving rise to

the claim; any claims received beyond this deadline would be denied.  (Hill Decl. Ex. A, at 11.)

I am not without sympathy to Plaintiff's claim that Defendants initially enticed him with a

prospective description of a much higher severance payment in their first Notice Letter but

subsequently retracted this amount.[8]  However, as that Notice Letter made clear from the outset,

the amount of severance as determined in accordance with the terms of the Plan would prevail

over any description of eligible severance in the Notice Letter.  Even assuming that Plaintiff's

contention that he was due a larger sum than the actual amount he received in the payment

window after his September 16, 2018 termination date is a reasonable interpretation of the Plan,

Plaintiff had 60 days from that date to make his case to JPMC Corporate Employee Relations.

However, Plaintiff only filed his claim on December 3, 2019, after losing his arbitration bid and

over a year after the alleged erroneous payment giving rise to the instant dispute.  As JPMC's

April 14 Letter states, "the appeal can be denied on that basis alone."  (Pl.'s Decl. Ex. 5, at 2.)

This determination is supported by a plain reading of the Plan documents, and alone is fatal to

Plaintiff's claim.  *See Pesca v. Bd. of Trs., Mason Tenders' Dist. Council Pension Fund*, 879

F.Supp. 23, 24–25 (S.D.N.Y. 1995) (holding denial of benefits not arbitrary and capricious

where the administrator "applied the plain letter of the Plan documents").

In any case, I find that Plaintiff has not stated a claim that the Administrator acted

arbitrarily or capriciously in finding that Plaintiff was eligible to 40 weeks of severance pay

based on a weekly base salary—excluding all bonuses, commissions, overtime, and other forms

---

[8] Although I note that the amount of annual eligible compensation of $400,000—an apparently erroneous figure in the Notice Letter—is more than four times Plaintiff's annual salary of $47,520.20 based upon Plaintiff's weekly salary of $913.85—a figure that Plaintiff does not dispute.  This suggests that Plaintiff may have been aware at the time Defendants' representative confirmed, at Plaintiff's request, that Plaintiff would receive forty-eight weeks of pay calculated upon an annual eligible base compensation of $400,000—that is, $369,230.77—in exchange for executing the Release described in the Notice Letter that the initial figure was erroneous.  (*See* Compl. 3–4, ¶¶ 4–5.)

of special or incentive remuneration—of $913.85 and sixteen years of service, in accordance

with the chart set forth in the Plan.  (Hill Decl. Ex. A, at 8.)  Both the January 31 and April 14

claim denial letters detail the Administrator's basis for determining that Plaintiff was eligible to a

gross amount of $36,553.85 under the Plan, and both explanations conform with the description

of how severance pay was to be calculated under the Plan.  (*See* Pl.'s Decl. Exs. 4–5.)  In making

a determination, the Administrator relied on a comprehensive record, including "1) the Notice, 2)

the Revised Notice, 3) the release dated September 5, 4) the claim dated December 3, 2019, 5)

the appeal letter dated February 19, 2020, 6) a pay statement generated 1/31/20, 7) the salary

profile statement generated 3/2/20, and 8) the Record History."  (Pl.'s Decl. Ex. 5, at 3.)  As the

Revised Notice, salary profile statement, and pay statement are not before me, I cannot

conclusively determine Plaintiff's Eligible Compensation for purposes of the Plan.  However,

what is clear is that Plaintiff has not alleged that the Administrator erred in this respect.  As

noted, Plaintiff does not contest that the Administrator's description of his weekly base salary as

$913.85 was inaccurate, or identify any documentation or allegations indicating that his salary

was any higher.  Instead, Plaintiff's primary argument against dismissal of his ERISA claim is

simply that the initial Notice Letter he received contained a different description of his salary.

While an unfortunate initial mistake, this alone is not sufficient for me to find that Plaintiff has

stated a claim for additional relief under the Plan.  Based on the evidence and the pleadings

before me, the Administrator's decision to award Plaintiff a gross amount of $36,553.85 appears

to comport with the express terms and payment determination chart of the Plan.  Without an

alternative account of how Plaintiff ought to have received a different sum under the Plan, I am

unable to conclude that the Administrator's denial of additional severance payment was "without

reason, unsupported by substantial evidence or erroneous as a matter of law."  *McCauley*, 551

F.3d at 132 (citation omitted).  Under an arbitrary and capricious standard of review, the

Administrator's decision must stand.  *See id.*

As Plaintiff fails to state a claim that the Plan Administrator acted arbitrarily and

capriciously in denying Plaintiff's appeal for additional benefits under the Plan, Defendants'

motion to dismiss Plaintiff's ERISA claim (Third Cause of Action) is GRANTED.

### B.      *Plaintiff's Request to Amend*

Plaintiff requests that, in the event that Defendants prevail on their motion to dismiss, I

grant him an opportunity to amend his Complaint to address any pleading deficiencies.  (Pl.'s

Opp. Mem. 19.)

I first note that this case is still in an incipient stage, discovery has not yet taken place,

Plaintiff has not been dilatory in seeking leave to amend, and Defendants have not claimed that

they would suffer undue prejudice should Plaintiff be allowed to file an amended complaint.

However, Plaintiff has not yet provided a copy of his proposed amended complaint or explained

the basis for his proposed amendments "so that both the Court and opposing parties can

understand the exact changes sought" and assess the propriety of the suggested changes.  *Zito*,

2004 WL 2211650, at *25 (internal quotation marks omitted).

As discussed above, Plaintiff's state law claims are preempted by ERISA and Plaintiff

has failed to state a claim for relief on the merits of his remaining ERISA claim.  Faced with

these substantive defects, Plaintiff has made no indication of how repleading would address the

issues raised in Defendants' motion to dismiss.  As Plaintiff has provided no insight into the

nature of his proposed amendments, granting Plaintiff an opportunity to amend the complaint at

this juncture would be premature.  Accordingly, Plaintiff's motion for leave to amend is

DENIED without prejudice to refile accompanied by a proposed amended complaint and a

statement concerning how the amendments address the deficiencies outlined above within thirty days of the entry of this Order & Order.

**V.**      <u>**Conclusion**</u>

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  Plaintiff's motion for leave to amend the complaint is DENIED without prejudice to refile accompanied by a proposed amended complaint and a statement concerning how the amendments address the deficiencies within thirty days of the entry of this Order.

The Clerk of Court is respectfully directed to terminate the open motion at Document 19.

SO ORDERED.

Dated: June 15, 2021
       New York, New York

Vernon S. Broderick
United States District Judge